GRAHAMHOLLIS APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Hali M. Anderson (SBN 261816)
handerson@grahamhollis.com
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiffs PAMELA STEWART
and ZULEKHA ABDUL

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA STEWART and ZULEKHA ABDUL, individually and on behalf of all similarly situated and aggrieved employees of Defendants in the State of California,<br><br>        Plaintiffs,<br><br>   v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC. and DOES 1 THROUGH 50, inclusive,<br><br>        Defendants. | Case No.: 3:19-cv-02043-AGS-DDL<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT**<br><br><br><br>Complaint Filed: September 13, 2019<br>Judge: Hon. Andrew G. Schopler |

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

## **Table of Contents**

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................. 3

    A.    THE PARTIES ........................................................................................... 3

    B.    PROCEDURAL SUMMARY .................................................................... 3

III.  SUMMARY OF THE CLAIMS AND DEFENSES ............................................. 6

    A.    REST PERIOD CLAIMS .......................................................................... 6

    B.    UNTIMELY PAYMENT OF FINAL WAGES CLAIMS (REST PERIOD PREMIUMS) .................................................................. 7

    C.    WAGE STATEMENT CLAIMS (REST PERIOD PREMIUMS) ................. 8

    D.    PAGA PENALTY CLAIMS (REST PERIODS AND DERIVATIVE CLAIMS) ................................................................................................ 8

    E.    DEFENDANT'S DEFENSES .................................................................... 9

    F.    REASONABLENESS OF THE SETTLEMENT ACHIEVED .................. 10

IV.   SUMMARY OF THE PROPOSED SETTLEMENT ......................................... 10

    A.    SETTLEMENT CONSIDERATION AND ALLOCATION ..................... 11

    B.    SETTLEMENT ALLOCATION FORMULA ........................................... 11

    C.    NOTICE PROCEDURES ........................................................................ 12

    D.    TIMING OF SETTLEMENT DISBURSEMENTS .................................. 13

    E.    TAX TREATMENT .................................................................................. 14

V.    THE CLASS HAS PREVIOUSLY BEEN CERTIFIED ................................... 14

VI.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................ 15

VII.  PRELIMINARY APPROVAL SHOULD BE GRANTED ................................... 16

    A.    THE SETTLEMENT IS THE RESULT OF SERIOUS, INFORMED, AND NON-COLLUSIVE NEGOTIATIONS ............................................. 16

    B.    THE DISCOVERY AND INVESTIGATIONS WERE EXTENSIVE ........ 16

    C.    THE RISKS INHERENT IN CONTINUED LITIGATION ARE GREAT ..................................................................................................... 17

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

i

D.     THE SETTLEMENT IS A REASONABLE COMPROMISE OF
       CLAIMS ........................................................................................ 18

E.     PLAINTIFFS' COUNSEL IS EXPERIENCED IN SIMILAR WAGE-
       AND-HOUR LITIGATION......................................................... 18

F.     THE NOTICE OF SETTLEMENT CONFORMS TO ALL
       APPLICABLE STATUTES AND RULES ................................. 18

VIII.  THE ATTORNEYS' FEE ALLOCATION UNDER THE SETTLEMENT
       AGREEMENT IS FAIR ........................................................................ 20

IX.    THE CLASS REPRESENTATIVE ENHANCEMENT AWARDS ARE
       FAIR AND APPROPRIATE................................................................. 21

X.     CONCLUSION................................................................................... 23

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

ii

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bond v. Ferguson Enterprises, Inc.*,
   No. 1:09-CV- 1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. 2011) .............22

*Brotherton v. Cleveland*,
   141 F.Supp.2d 907 (S.D. Ohio 2001) ................................................................22

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..........................................................................15

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......22

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ................................................................................20

*Lefevre v. Five Star Quality Care, Inc.*,
   No. 515CV01305VAPSPX, 2021 WL 2389884 (C.D. Cal. Jan. 7, 2021) .........15

*Martin v. FedEx Ground Package Sys., Inc.*,
   No. C 06-6883 VRW, 2008 WL 5478576 (N.D. Cal. 2008).............................20

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982)..............................................17

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................15

*Romero v. Producers Dairy Foods, Inc.*,
   No. 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. 2007)...........................20

*Ross v. U.S. Bank Nat. Ass'n*,
   No. C07-02951SI, 2010 WL 3833922 (N.D. Cal. 2010) ...................................22

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. 2020)................................................................20, 21

*///*

iii

*Singer v. Becton Dickinson & Co.*,

No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. 2010) ............20, 22

*Stuart v. Radioshack Corp.*,

No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. 2010) ..............................20

*In re Syncor ERISA Litig.*,

516 F.3d 1095 (9th Cir. 2008) ...................................................................15

*Van Vranken v. Atlantic Richfield Co.*,

901 F.Supp. 294 (N.D. Cal. 1955) .............................................................23

*Vasquez v. Coast Valley Roofing, Inc.*,

266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................22

*Wren v. RGIS Inventory Specialists*,

No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)................15

**State Cases**

*Mamika v. Barca*,

68 Cal. App. 4th 487 (1998) .......................................................................8

**Federal Statutes**

28 U.S.C. § 1332 .........................................................................................4

28 U.S.C. § 1441 .........................................................................................4

28 U.S.C. § 1446 .........................................................................................4

28 U.S.C. § 1453 .........................................................................................4

**State Statutes**

California Business and Professions Code § 17200 .................................................4

California Labor Code § 203 ...................................................................7, 8

California Labor Code § 226 .........................................................................8

California Labor Code § 226.7 ......................................................................6

California Labor Code § 226.7(b) .................................................................7

California Labor Code § 2698 ....................................................................1, 2

California Labor Code § 2699(e)(1) ..............................................................8

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

iv

TABLE OF AUTHORITIES

California Labor Code § 2699(f) ................................................................9

California Labor Code § 2699(g)................................................................8

California Labor Code § 2699.3(g)(1) .......................................................9

**Rules**

Federal Rules of Civil Procedure 23....................................15, 18, 19

**Regulations**

Industrial Welfare Commission Wage Order ...............................3, 4, 5, 6

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This motion seeks preliminary approval of a rest period class action settlement between Plaintiffs Pamela Stewart and Zulekha Abdul ("Plaintiffs") and Defendant Quest Diagnostics Clinical Laboratories, Inc. ("Defendant") (collectively, the "Parties") for the gross settlement amount of $3,950,000.00 ("Gross Settlement Amount") for a class of approximately 5,380 individuals. The "Settlement Class"[1] is defined as: "All current and former non-exempt Patient Service Representatives of Defendant during the Class Settlement Period." The Class Settlement Period is defined as the period from September 13, 2015, to the earlier of: (1) the date of preliminary approval of the settlement; (2) October 31, 2024 (approximately 5 months from mediation); or (3) the date upon which the total number of workweeks from September 13, 2015, forward equals 800,000 workweeks. A true and correct copy of the Stipulation of Class and PAGA Representative Action Settlement is attached as **Exhibit A** (referred to as the "Settlement Agreement" or "SA") to the concurrently filed Declaration of Hali M. Anderson in Support of Plaintiffs' Motion for Preliminary Approval of Class and PAGA Representative Action Settlement ("Anderson Decl."). The Settlement Agreement, in its entirety, is incorporated herein by reference. This Settlement resolves claims related to rest breaks and rest break derivate claims only.

Plaintiffs also represent a group of aggrieved employees on behalf of the State of California as a private attorney general pursuant to the Private Attorneys General Act of 2004 (codified in California Labor Code §§ 2698 *et seq.*, "PAGA") (the "PAGA Members"). The PAGA Members are Settlement Class Members who worked in any pay period from July 10, 2018, through the date of the end of the Class Settlement Period ("PAGA Settlement Period").

///

///

---

[1] Also referred to as "Settlement Class Members."

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

The Settlement Agreement is a non-reversionary settlement, meaning that none of the Gross Settlement Amount will revert to Defendant. SA, at ¶ 3.2.1.

Settlement Class Members are not required to submit a claim form to receive their settlement share and the applicable employer-side payroll taxes are to be paid by Defendant in addition to the Gross Settlement Amount. *Id.* Subject to court approval, the "Net Settlement Amount" of at least $1,475,647.33, will be distributed to Settlement Class Members who do not request exclusion from the settlement, with a portion of that distributed as PAGA penalties to the PAGA Members.

| Gross Settlement Amount | $3,950,000.00 |
|---|---|
| Attorneys' Fees | (up to $1,316,666.67) |
| Litigation Costs | (up to $1,005,000.00) |
| Settlement Administrator Costs | (up to $22,686.00) |
| Class Representative Enhancement Awards | (up to $30,000.00)[2] |
| PAGA Payment | ($100,000.00) |
| Net Settlement Amount | $1,475,647.33 |

Because the settlement is fair and reasonable, was negotiated at arm's length between counsel following extensive investigation and discovery, was reached after participation in a full-day mediation, and is well within the zone of reasonableness, Plaintiffs requests entry of an order: (1) preliminarily approving the settlement on the terms set forth in the Proposed Order filed concurrently with this motion; (2) approving the Court Approved Notice of Class and PAGA Action Settlement and Hearing Date for Final Court Approval ("Notice of Settlement"), which is attached as **Exhibit 1** to the Settlement Agreement, to be distributed to Settlement Class Members pursuant to the Settlement Agreement; (3) appointing Simpluris, Inc. ("Settlement Administrator") to administer the settlement and notice process; and (4) scheduling a hearing for final approval after the completion of the settlement notice process. Anderson Decl., at ¶ 7.

///

///

---

[2] $15,000.00 to each Plaintiff.

2

## II.   BACKGROUND

### A. THE PARTIES

Defendant Quest Diagnostics Clinical Laboratories, Inc., is a clinical laboratory and provider of diagnostic information services operating throughout California with its headquarters in New Jersey. Defendant offers phlebotomy services, drug testing, and specialized testing, such as for the COVID-19 virus.

Plaintiff Pamela Stewart worked for Defendant from April 25, 2011, until June 7, 2022. Anderson Decl., at ¶ 18. Plaintiff Zulekha Abdul worked for Defendant from August 7, 2017, until May 20, 2020. *Id.* Both Plaintiffs are Black/African American and worked for Defendant as Phlebotomists/Patient Service Representative 1s in San Deigo, California. Plaintiffs' job duties included drawing quality blood samples from patients and preparing those specimens for lab testing. *Id.*

Plaintiffs allege that Defendant's current and former non-exempt Patient Service Representatives—including Plaintiffs, the Settlement Class Members, and the PAGA Members—experienced various violations of California's wage and hour laws. *Id.*, at ¶ 19.

Based on the discovery produced, as well as the terms of the Settlement Agreement, it is believed that the putative Class consists of approximately 5,380 Settlement Class Members. Anderson Decl., at ¶ 20; SA, at ¶ 3.2.2.

### B. PROCEDURAL SUMMARY

On August 14, 2019, Plaintiff Stewart submitted a letter to the California Labor and Workforce Development Agency ("LWDA") to notify the LWDA, pursuant to the PAGA, of her intent to seek civil penalties against Defendant for violations of the California Labor Code ("Labor Code"), as well as the applicable Industrial Welfare Commission ("IWC") Wage Order. Anderson Decl., at ¶ 21.

On September 13, 2019, Plaintiff Stewart filed her individual and class action complaint against Defendant in San Diego Superior Court. Plaintiff Stewart's complaint alleged: (1) Failure to Prevent Discrimination; (2) Racial Discrimination; (3) Wrongful Failure to Promote Due to Racial Discrimination; (4) Failure to Provide Equal Pay Based

3

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

on Race; (5) Failure to Provide Rest Periods; and (6) violations of California's Unfair Competition Law ("UCL"), codified in California Business and Professions Code sections 17200, *et seq*. *Id.*, at ¶ 22.

On October 23, 2019, Defendant filed its Notice of Removal based on 28 U.S.C. sections 1332, 1441, 1446, and 1453, at which time the case was removed to the United States District Court for the Southern District of California. *Id.*, at ¶ 23.

On February 12, 2020, Plaintiff Stewart amended her complaint, adding Zulekha Abdul as a named plaintiff, and one additional cause of action for PAGA penalties based on the allegations set forth in the original complaint. *Id.*, at ¶ 24.

On June 11, 2021, Defendant filed a Motion to Strike Plaintiffs' PAGA Claims. *Id.*, at ¶ 25; ECF 86.

On October 5, 2022, the Court certified the following California Class: All of Defendant's non-exempt California Patient Service Representatives who were not compensated with one hour of pay for all instances where they did not receive a duty-free and uninterrupted 10-minute rest period consistent with California law, any time between September 13, 2015, and the date of judgment. *Id.*, at ¶ 26; ECF 158. The Court declined to certify the first five causes of action related to race discrimination, so those claims remained on an individual basis only. The Court also declined to strike Plaintiffs' PAGA Claims. *Id.*

On October 19, 2022, Defendant filed a Motion for Reconsideration of the Court's Order on Class Certification and the Motion to Strike. *Id.*, at ¶ 25; ECF 161. Plaintiffs opposed this Motion. *Id.*, at ¶ 27; ECF 164.

On October 25, 2022, Plaintiffs filed a Motion for Leave to File Second Amended Complaint, as well as a Motion to Amend the Class Certification Order seeking to amend the Complaint and certify wage statement and waiting time penalty claims derivate to the certified rest break claims. *Id.*, at ¶ 28; ECF 162, 163.

On September 19, 2023, the Court denied both Defendant's Motion for Reconsideration and Plaintiffs' Motions to Amend. *Id.*, at ¶ 29; ECF 219.

4

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

On October 3, 2023, Defendant filed a Petition for Permission to Appeal. *Id.*, at ¶ 30; ECF 222. Plaintiffs opposed this Petition.

On October 6 and 27, 2023, the Parties exchanged Expert Disclosures. Following the disclosures, the Parties took the depositions of each party's respective experts. *Id.*, at ¶ 31.

On November 23, 2023, the Ninth Circuit Court of Appeal denied Defendant's Petition. *Id.*, at ¶ 32.

On December 18, 2023, Defendant filed a Motion for Summary Judgment and a Motion to Strike Experts. *Id.*, at ¶ 33; ECF 240 and 241. Plaintiffs opposed these Motions. *Id.*, at ¶ 31; ECF 244 and 245.

On February 13, 2024, the Parties participated in a Mandatory Settlement Conference with the Honorable Magistrate Judge David D. Leshner. *Id.*, at ¶ 34. The Parties did not settle. *Id.*

In or about March 2024, the Parties agreed to attend a private mediation. Prior to mediation, Plaintiffs' counsel conducted significant formal and informal discovery. *Id.*, at ¶ 35. Discovery, investigation, and prosecution has included, among other things, numerous telephonic conferences with Plaintiffs; inspection and analysis of hundreds of pages of documents and other information produced by Plaintiffs and Defendant; analysis of work-related data from a sample of Settlement Class Members and PAGA Members; and analysis of the legal positions taken by Defendant; investigation into the viability of class treatment of the claims asserted in the action; analysis of potential class-wide damages, including information sufficient to understand Defendant's potential defenses to Plaintiffs' claims; research of the applicable law with respect to the claims asserted in the amended complaint and the potential defenses thereto; and assembling and analyzing of data for calculating damages. *Id.* Furthermore, in support of Plaintiffs' motion for class certification, Plaintiffs retained multiple experts and consultants, including Dr. Dwight D. Steward, an economist and statistician to analyze Defendant's time and pay records; Dr. Jon Krosnick, a professor of communication and political science at Stanford University,

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

to provide opinions on whether a reliable survey can be conducted of some employees of Defendant; and Sean C. Chasworth, a data scientist and statistician specializing in wage-and-hour and other employment litigation. *Id.*

On June 3, 2024, the Parties participated in a full-day mediation with Eve Wagner, who is a full-time mediator with extensive experience in California wage and hour lawsuits. *Id.*, at ¶ 36. The mediation negotiations were contentious, but the Parties were eventually able to reach the broad terms of an agreement. The Parties continued their post-mediation negotiations and executed a longform Settlement Agreement on August 15, 2024. *Id.*

At the time of settlement, the Parties' Final Pretrial Conference was set for September 13, 2024. *Id.*, at ¶ 37. Thus, the Parties were nearly on the eve of trial.

Pursuant to the terms of the Settlement Agreement, Plaintiffs will file a supplemental PAGA notice, if needed, and then a Second Amended Complaint that adds the derivative rest break claims. Anderson Decl., at ¶ 38; SA, at ¶ 3.1. Plaintiffs now seek the Court's preliminary approval of the Settlement Agreement.

## III. SUMMARY OF THE CLAIMS AND DEFENSES

Plaintiffs' proposed Settlement resolves claims for missed rest periods and derivative violations on behalf of current and former non-exempt Patient Service Representatives ("PSRs") who worked for Defendant during the Class Settlement Period. Anderson Decl., at ¶ 39.

### A. REST PERIOD CLAIMS

Pursuant to Labor Code section 226.7, and the applicable IWC Wage Order, Defendant failed to provide Plaintiffs and the Settlement Class Members with the opportunity to take an off-duty, uninterrupted, ten-minute rest period for every four hours worked or major fraction thereof.

The "Rest Periods" section of the applicable IWC Wage Order states, "[e]very employer shall authorize and permit employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall ///

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."

Here, Plaintiffs alleged that Defendant failed to authorize and permit Plaintiffs and Settlement Class Members to take ten-minute rest periods for every four-hour work period or major fraction thereof. Anderson Decl., at ¶ 40. Specifically, Plaintiffs alleged that Defendant failed to adopt and implement a policy that authorized and permitted Plaintiffs and Settlement Class Members to take duty-free, ten-minute rest periods for every four-hour work period or major fraction thereof. Instead, Defendant consistently failed to authorize and permit rest periods by imposing strict productivity and urgency goals while also understaffing its Patient Service Centers. Moreover, Defendant failed to relieve Plaintiffs and Settlement Class Members of all duties during their rest periods, thereby regularly requiring Plaintiffs and Settlement Class Members to meet productivity and urgency goals and to remain on duty until any patients waiting had been serviced. As such, Plaintiffs and Settlement Class Members were unable to take their rest periods due to their workloads, Defendant's scheduling, and Defendant's policies and expectations. When they were able to take rest periods, they were frequently interrupted. Despite being unable to take rest periods, Defendant failed to pay rest period premiums. Of the few rest period premiums that were paid, many were paid at the incorrect rate, further supporting the fact that Defendant had no real practice of paying rest period premiums. *Id.*

Plaintiffs further alleged that, in addition to failing to authorize and permit compliant rest periods, Defendant did not provide rest period premiums to Plaintiffs and Settlement Class Members when they were not provided with a compliant rest period in accordance with Labor Code section 226.7(b). *Id.*

## B. UNTIMELY PAYMENT OF FINAL WAGES CLAIMS (REST PERIOD PREMIUMS)

As a result of Defendant's failure to pay Plaintiffs and the Settlement Class Members for rest period premiums, Plaintiffs allege that Defendant has violated and continues to violate Labor Code section 203. Labor Code section 203 provides "if an employer willfully

7

fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty. . .” for up to 30 days. Labor Code § 203; *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998).

## C. WAGE STATEMENT CLAIMS (REST PERIOD PREMIUMS)

California Labor Code section 226 obligates employers, semi-monthly or at the time of each payment to furnish an "accurate" itemized wage statement in writing showing, among other things: (1) the gross wages earned by the employee, (2) the total hours worked by the employee; and (3) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. Thus, a wage statement must accurately show how the employee's wages were calculated.

Plaintiffs allege that, due to Defendant's failure to provide employees with lawful off-duty rest periods and pay rest period premiums, the wage statements issued by Defendant do not indicate the correct amount of gross wages earned, the correct number of hours worked, the correct net wages earned, or at the correct rate. Anderson Decl., at ¶ 42. Furthermore, when Defendant did pay rest period premiums, many of them were paid at the incorrect rate of pay. *Id.*

## D. PAGA PENALTY CLAIMS (REST PERIODS AND DERIVATIVE CLAIMS)

PAGA allows an aggrieved employee to bring suit against an employer for violations of most Labor Code provisions. Suits brought under PAGA do not affect the employee's right to recover other remedies under state or federal law. *See* Labor Code § 2699(g). Wherever the Labor Code gives the LWDA discretion to assess a civil penalty, a court is authorized to exercise the same discretion. Labor Code § 2699(e)(1). The statute of limitations for PAGA suits is one year. An employee who prevails in an action brought under PAGA is entitled to an award of reasonable attorneys' fees and costs. The penalties available under PAGA are those provided in the underlying Labor Code provision that is violated or, if no penalty is listed, those provided by PAGA itself. Where the Labor Code does not provide for a penalty, PAGA establishes a civil penalty of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

pay period for each subsequent violation. Labor Code § 2699(f). For any civil penalties collected under PAGA, seventy-five percent of the penalties are distributed to the LWDA for enforcement and education, and twenty-five percent is distributed to the aggrieved employees.[3]

Plaintiffs alleged that by virtue of each of Defendant's foregoing Labor Code violations, Plaintiffs and the Settlement Class Members are, in addition to other remedies, entitled to civil penalties under PAGA. Anderson Decl., at ¶ 43. This cause of action opens Defendant to additional penalties for the Labor Code violations, in addition to attorneys' fees and costs. *Id.*

### E. DEFENDANT'S DEFENSES

Defendant maintains that it has complied with California law in all respects, denies all liability of any kind associated with the claims and allegations, and further denies that Plaintiffs, the Settlement Class Members, or the PAGA Members are entitled to any relief. Anderson Decl., at ¶ 44. Defendant also denies that these allegations are appropriate for class or representative treatment for any purpose other than the settlement. *Id.*

Throughout the course of this litigation, Defendant has consistently denied all the material allegations in the complaint; that it violated any applicable laws; that it is liable for damages, restitution, penalties, interest, attorneys' fees, costs, or for any other remedy sought by Plaintiffs; or that class certification and representative treatment are appropriate as to the claims asserted in the complaint. Defendant contends that at all times, its policies, practices and procedures complied with California law. *Id.*

Defendant argued that its rest period policies were compliant with California law, that they provided and made available ten-minute rest breaks to all Settlement Class Members, and that the Settlement Class Members did in fact take their required rest periods. Thus, whether Settlement Class Members missed their rest periods would turn on

///

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

---

[3] The June 19, 2024, amendments to the PAGA have been omitted, as they do not apply to civil actions filed before June 19, 2024. Labor Code § 2699.3(g)(1).

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

individualized issues and this Action was, therefore, ripe for a motion for class decertification. *Id.*, at ¶ 45.

Defendant further asserted that Plaintiffs PAGA claims largely failed under the doctrine of res judicata due to a prior settlement of PAGA claims against Defendant's parent company. *Id.*, at ¶ 46.

At the time the Parties reached a settlement, Defendant had a pending Motion for Summary Judgment, which had been fully briefed. Defendant also stated that it might potentially file a Motion for Decertification depending on the Court's Order on the Summary Judgment Motion. *Id.*, at ¶ 47.

In considering these significant risks and others, as well as the time, expense and cost of litigation, trial and appeals, the Parties agreed that settlement was appropriate, and that the settlement here is fair and reasonable.

## F. REASONABLENESS OF THE SETTLEMENT ACHIEVED

In coming to a determination that this settlement is fair and reasonable and in the best interests of the Settlement Class, Plaintiffs took into consideration the risk of the Court granting summary judgment; granting de-certification; compelling much of the action to arbitration; the risk that the Court may not award wage statement penalties, PAGA penalties, or waiting time penalties based on a lack of willfulness or difficulties in establishing bad faith; and other potential defenses of Defendant on the merits. Anderson Decl., at ¶ 48-49. If Defendant prevailed on any of these defenses, the claims of the Class would potentially be worth nothing. The settlement, given the risks, is fair and reasonable.

## IV. SUMMARY OF THE PROPOSED SETTLEMENT

Under the terms of the Settlement Agreement, Defendant will be released from all class and PAGA claims related to Defendant's alleged failure to provide rest periods or pay the requisite premiums asserted in the action or the anticipated Second Amended Complaint, in exchange for Defendant's agreement to pay a non-reversionary Gross Settlement Amount of $3,950,000.00. *See generally* Settlement Agreement. The release is ///

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

10

carefully tailored to the rest period and rest-period derivative claims at issue in this case. SA, at ¶ 1.28; 1.29.

## A. SETTLEMENT CONSIDERATION AND ALLOCATION

The Gross Settlement Amount includes: (1) the fees and expenses of the Settlement Administrator; (2) Plaintiffs' counsel's attorney fees not to exceed 33.33% of the Gross Settlement Amount, i.e., $1,316,666.67; (3) litigation expenses and costs not to exceed $1,005,000.00; (4) an enhancement award to each of the named Plaintiffs of up to $15,000.00; and (5) PAGA penalties in the amount of $100,000 which are to be distributed 75% to the LWDA, and 25% to the PAGA Members. SA, at ¶ 3.2-3.3.

After all Court-approved deductions from the Gross Settlement Amount, the remaining amount (i.e., the Net Settlement Amount), which consists of at least $1,475,647.00, will be distributed to the Settlement Class Members who do not request exclusion from the settlement, and $25,000.00 portion of the PAGA Payment allocated to PAGA will be distributed to the PAGA Members. SA, at ¶ 3. Applicable employer-side payroll taxes will be paid by Defendant separate from the Gross Settlement Amount. SA., at ¶ 3.4.1.

## B. SETTLEMENT ALLOCATION FORMULA

Individual payments to the Settlement Class Members from the class-portion of the settlement will be calculated and apportioned on a *pro rata* basis, based on the number of Eligible Workweeks each Participating Class Member worked during the Class Settlement Period (the "Individual Settlement Payments"). SA, at ¶ 3.3.4. To determine each Settlement Class Member's estimated "Individual Settlement Payment," the Settlement Administrator will use the following formula: estimated Individual Settlement Payment = individual Eligible Workweeks ÷ all Settlement Class Member Eligible Workweeks × Net Settlement Amount. *Id.*

Any portion of the PAGA Payment not approved by the Court shall be added to the Net Settlement Amount and any additional amount ordered by the Court shall be paid from the Gross Settlement Amount. SA., at ¶ 3.3.5. Additionally, 25% of the PAGA Payment is

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

11

to be distributed to the PAGA Members as Individual PAGA Payments and shall be distributed based on a *pro rata* share based on the number of Eligible Pay Periods each PAGA Member worked during the PAGA Settlement Period. *Id.*

## C. NOTICE PROCEDURES

Within 30 calendar days of the court granting preliminary approval of the Settlement Agreement (the "Preliminary Approval Date"), Defendant shall provide the Settlement Administrator with an updated list of Settlement Class Members containing Class Data for each Settlement Class Member, including their name, last known address, social security number, and number of Eligible Workweeks and Eligible Pay Periods or data sufficient for the Settlement Administrator to determine Eligible Workweeks and Eligible Pay Periods. SA, at ¶ 1.3, 4.2.1. The Class Data shall be based on Defendant's personnel and payroll records and provided in a format acceptable to the Settlement Administrator. *Id.*

Within 21 calendar days of receiving the Class Data, the Settlement Administrator shall send via United States first class mail the Notice of Settlement to the Settlement Class Members. SA, at ¶ 4.2.2. The Notice of Settlement will be in substantially the form as the one attached as **Exhibit 1** to Settlement Agreement. The Notice of Settlement shall advise Settlement Class Members of their options, which include filing an objection to the Settlement and receiving an Individual Settlement Payment and an Individual PAGA Payment (if applicable); or taking no action and receiving an Individual Settlement Payment and an Individual PAGA Payment (if applicable). *Id.*, at 4.1.4.

The Notice of Settlement will also inform the Settlement Class Members of their right to object to the settlement. SA, at ¶ 4.3.2. Any Settlement Class Member who wishes to object to the settlement may submit a written objection to the Settlement Administrator no later than 45 days following the date on which the Settlement Administrator first mails the Notice of Settlement to the Settlement Class Members ("Response Deadline"). *Id.*, at ¶ 1.31. Alternatively, Settlement Class Members may also seek Court permission to object to the Settlement Agreement by appearing at the final approval hearing, either on their own or through an attorney. *Id.*, at ¶ 4.4.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

12

Settlement Class Members who do not timely request exclusion from the settlement will be deemed to be Participating Class Members without having to submit a claim form or take any other action. *Id.*, at ¶ 4.3.2. To opt-out from the settlement, the Settlement Class Member must submit a written opt-out request from the settlement to the Settlement Administrator ("Opt-Out Request"), postmarked no later than the Response Deadline. *Id.*, at ¶ 4.3.1.

In the event that any Notice of Settlement is returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall run a skip-trace using that Settlement Class Member's social security number in an effort to attempt to ascertain the current address of the Settlement Class Member. If such an address(es) is ascertained, the Settlement Administrator shall re-mail the Notice of Settlement within 10 calendar days. If alternative addresses are obtained for a Settlement Class Member, the Settlement Administrator shall promptly re-send the Notice of Settlement to the alternative addresses. *Id.*, at ¶ 4.2.2

### D. TIMING OF SETTLEMENT DISBURSEMENTS

Defendant shall pay the Gross Settlement Amount into the Qualified Settlement Fund set up, held, and controlled by the Settlement Administrator within 21 calendar days after the Effective Date or within 7 days of the Settlement Administrator providing all information necessary for Defendant to transfer funds to the Qualified Settlement Fund, whichever is later. *Id.*, at ¶ 4.9.1.

Settlement Class Members will have 180 days to cash their settlement checks. *Id.*, at ¶ 4.10. After the 180 days has expired, the Settlement Administrator shall void the uncashed settlement checks and the amount of the uncashed settlement payments shall be transmitted to the State of California, to be held and disposed of by the Controller in accordance with California's Unclaimed Property Law for the benefit of the Participating Class Members and PAGA Members who did not cash the settlement checks until such time that they claim their property. *Id.* The Parties agree that this disposition results in no

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

"unpaid residue," as the entire Net Settlement Amount will be paid out to Participating Class Members, whether or not they timely cash their Individual Settlement Payments. *Id.*

## E. TAX TREATMENT

The Settlement Agreement provides all Individual Settlement Payments to Participating Class Members shall be allocated as follows for tax purposes: 40% of each Individual Settlement Payment reflects compromise of claims for alleged unpaid wages; 30% of each Individual Settlement Payment reflects compromise of a claim for interest, and; 30% of each Individual Settlement Payment reflects compromise of a claim for penalties. The portion of the Individual Settlement Payment attributable to unpaid wages will be subject to regular and/or applicable payroll and income tax withholdings (for the employee portion only) and will be reported on an IRS Form W-2. SA., at ¶ 3.4.1.

With respect to the individual payments made under the PAGA Payment, all Individual PAGA Payments shall be allocated as 100% penalties, for which a 1099 will be issued if required. *Id.*, at ¶ 3.4.2. PAGA Members will be responsible for paying all other taxes due on their Individual PAGA Payments. *Id.* PAGA Members will be responsible for paying all taxes due on their Individual PAGA Payments. *Id.* Defendant will separately and additionally pay their share of employer payroll taxes on the sum allocated to wages. *Id.*, at 3.2.1.

## V.     THE CLASS HAS PREVIOUSLY BEEN CERTIFIED

On October 5, 2022, the Court certified the following California class: "All of Defendant's non-exempt California Patient Service Representatives who were not compensated with one hour of pay for all instances where they did not receive a duty-free and uninterrupted 10-minute rest period consistent with California law, any time between September 13, 2015, and the date of judgment." Anderson Decl., at ¶ 26.

Given this prior certification, there is no need to re-establish class certification or request provisional certification. The Court has already determined that the criteria for class certification have been met, thus affirming the validity and applicability of the class definition as it stands. This precludes the necessity of re-litigating the issue, allowing the

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

14

parties to focus on ensuring that the settlement process proceeds efficiently. While the Parties have stipulated to the filing of a Second Amended Complaint as part of this Settlement, the new claims are wholly derivative of the already-certified rest period claims.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, in deciding whether to approve a proposed class action settlement, the Court must first find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011); *Lefevre v. Five Star Quality Care, Inc.*, No. 515CV01305VAPSPX, 2021 WL 2389884, at *3 (C.D. Cal. Jan. 7, 2021). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying these factors, the proposed settlement is fair, reasonable, and adequate.

As explained above, the issues in this case were hotly contested—both legally and factually. Anderson Decl., at ¶ 58. While Plaintiffs continue to believe in the merits of the case, Defendant argued that it substantially complied with California's wage and hour laws, and thus faced minimal exposure, if any. *Id.* Defendant asserted and would have continued to assert legal and factual grounds to defend against this action. *Id.* Thus, continued litigation would be costly, time consuming, and uncertain in outcome. *Id.* There is, for example, always a risk of the class being decertified, and Defendant had a pending Motion for Summary Judgment and Motion to Strike Experts. By contrast, the Settlement Agreement will yield a prompt, certain, and substantial recovery for Settlement Class Members, and benefits the Parties and the Court. In light of Defendant's defenses and the risks discussed herein, the Gross Settlement Amount of $3,950,000.00 is an excellent result

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

15

for a class action based solely on rest period violations and it is well within any understanding of the "fair, reasonable, and adequate" standard.

## VII.  PRELIMINARY APPROVAL SHOULD BE GRANTED

### A.  THE SETTLEMENT IS THE RESULT OF SERIOUS, INFORMED, AND NON-COLLUSIVE NEGOTIATIONS

The Settlement Agreement was negotiated at arm's length between counsel utilizing a professional and well-respected third party neutral. Anderson Decl., at ¶ 59. Counsel for both parties was thoroughly familiar with the complex legal and factual questions at issue in this litigation. *Id*. The Settlement Agreement is a product of intensive negotiations, supported by investigation and direct exchanges of information through discovery, during the course of settlement negotiations, including a full-day mediation. *Id*.

Although Plaintiffs and their counsel believed the class claims had merit and would withstand an attempt to decertify as well as summary adjudication, they recognized the potential risk, expense, and complexity posed by litigation, the uncertainty of trial, the discretionary nature of a damages award, and the reality that an appeal that can take several more years to litigate. *Id.*, at ¶ 60. The resulting Settlement Agreement was based on calculations, risk assessment, and non-collusive negotiation. *Id.* It takes the risks identified above and others into account in arriving at the non-reversionary settlement. *Id*.

### B.  THE DISCOVERY AND INVESTIGATIONS WERE EXTENSIVE

Counsel for the Parties spent months prior to the mediation developing the factual record for this case, engaging in discovery and exchanges of documents and information, and ensuring that both sides were fully informed about the strengths and weaknesses of their respective positions at the mediation and during subsequent settlement negotiations. Anderson Decl., at ¶ 62. The Parties, by and through their counsel attended a full-day mediation session before Eve Wagner, an experienced and well-respected mediator, which resulted in the resolution of the case on a class and representative basis. *Id*.

In addition, the Parties are represented by skilled and experienced counsel with extensive backgrounds in complex litigation and experience litigating similar wage and

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

hour class actions. *Id.*, at ¶¶ 9–15; 63. The Settlement Agreement was reached after extensive investigation and research, calculations and risk evaluation, substantial exchanges of documents, and Plaintiffs' counsel's thorough factual investigation, which were sufficient to evaluate Defendant's defenses. *Id.* The Settlement Agreement came only after the case was thoroughly investigated by Plaintiffs' counsel. *Id*. Plaintiffs' counsel agrees that this settlement is fair, adequate, and reasonable, and in the best interests of Settlement Class Members, especially in light of the fact that it provides a considerable settlement for rest period claims only. *Id.*

### C. THE RISKS INHERENT IN CONTINUED LITIGATION ARE GREAT

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court should also consider "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial . . . ." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). As described above, Defendant has strong defenses to Plaintiffs' claims, which create a real possibility that the claims might fail on the merits. Anderson Decl., at ¶ 64. Proceeding with litigation would impose a significant risk of no recovery as well as ongoing, substantial additional expenditures of time and resources.

Additionally, while Plaintiffs believe the case has merit, Plaintiffs and their counsel acknowledge that Defendant has grounds available for defending this action. The strength of Plaintiffs' case may have been weakened if the Court granted Defendant's motion for summary judgment, which was ultimately denied as moot, in light of the Parties' settlement. ECF 264.

If settlement were not achieved, continued litigation of the claims would take a substantial amount time and possibly confer no benefit on Settlement Class Members. By contrast, the settlement will yield a prompt, certain, and substantial recovery for the Settlement Class Members, which also benefits the Parties and the Court. In considering these risks, the choice was overwhelmingly in favor of settlement. Anderson Decl., at ¶ 64.

17

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

## D. THE SETTLEMENT IS A REASONABLE COMPROMISE OF CLAIMS

The Settlement Agreement represents a fair compromise given the risks and uncertainties presented by continued litigation. Defendant asserted and would have continued to assert legal and factual grounds to defend against this action, including factual and legal defenses on the merits. Moreover, continued litigation would be costly, time-consuming, and uncertain. In contrast, the Settlement Agreement ensures timely relief and substantial recovery of the Defendant's realistic exposure. Anderson Decl., at ¶ 65.

## E. PLAINTIFFS' COUNSEL IS EXPERIENCED IN SIMILAR WAGE-AND-HOUR LITIGATION

Plaintiffs' counsel is experienced in wage-and-hour class actions. Anderson Decl., at ¶¶ 9–15. Numerous state and federal courts have certified Ms. Anderson as adequate and competent class counsel in wage and hour class actions. *Id.* Ms. Anderson has dedicated her entire law practice to plaintiff class and representative employment-law. *Id.*, at ¶ 10.

The Parties' counsel agree that this settlement is fair, adequate, and reasonable in light of the nature of the claims, realistic risk adjusted value of damages, complexities of the case, the state of the law, and uncertainties of class certification and litigation. *Id.*, at ¶ 66. Given the risks inherent in litigation and the defenses asserted, this settlement is fair, adequate, and reasonable and in the best interests of Settlement Class Members and should be preliminarily approved. *Id.* The Settlement Agreement is also consistent with other settlements that received approval of the Courts. *Id.* Experienced counsel, operating at arm's length, have weighed the strengths and risks of the case, and endorse the proposed settlement. *Id.*, at ¶ 67. The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Id.*

## F. THE NOTICE OF SETTLEMENT CONFORMS TO ALL APPLICABLE STATUTES AND RULES

Federal Rule of Civil Procedure 23 (c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23

18

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

(c)(2)(B). The notice must concisely and clearly state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*

The proposed Notice of Settlement—which the parties have already agreed to—should be approved, as it fully informs the Settlement Class Members of the nature of the lawsuit and each Settlement Class Members' rights under the terms of the Settlement Agreement and applicable law. SA, Exh. 1. The Parties' notice plan is that notice of the Settlement Agreement will be disseminated directly to the Settlement Class Members by first-class mail by the Settlement Administrator 21 calendar days after receiving the Class Data. SA, at ¶ 4.2.2.

The content of the proposed Notice of Settlement fully complies with due process and the Federal Rules of Civil Procedure, Rule 23. The contents of the Notice of Settlement include, among other things: (1) a straightforward table outlining the members legal rights and options in the settlement; (2) a detailed explanation of the background of the case, including relevant procedural history; (3) the terms of the settlement; (4) how to get a settlement payment; (5) an explanation of what happens if the Court approves the settlement; (6) the procedure for the member to follow in requesting exclusion from the class settlement; (7) how to object to the settlement; (8) information about the final approval hearing; and (9) how to get more information if members have questions about the settlement. SA, Exh. 1. The 45-day deadline for Settlement Class Members to opt-out or challenge the number of workweeks worked during the Settlement Class Period is reasonable, as it provides Settlement Class Members with sufficient time to do so and, if they so choose, to seek independent legal advice in the interim. SA, at ¶ 1.31.

///

///

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

## VIII. THE ATTORNEYS' FEE ALLOCATION UNDER THE SETTLEMENT AGREEMENT IS FAIR

In addition, at the time of final approval, Plaintiffs' counsel will request attorneys' fees of up to 33.33% of the Gross Settlement Amount (i.e., $1,316,666.67), plus reimbursement of litigation expenses and costs of up to $1,005,000.00. SA, at ¶ 3.3.2. The fee amount is fair, reasonable, and represents a typical fee award in wage-and-hour class actions in California. The litigation costs payment is also reasonable and based on documentation, which will be discussed in Plaintiffs' Motion for Attorneys' Fees and Costs, filed at the time of final approval.

The requested fee of approximately one-third of the Gross Settlement Amount is also consistent with awards obtained in similar wage and hour class action cases approved by various courts in California. *See Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. 2010) (approving fee award of one-third of the total maximum settlement amount of $4.5 million and noting that the fee award of one-third of the total settlement was "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. 2010) (approving fee award of 33.33% of the common fund); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. 2007) (awarding fees of one-third of common fund in a wage and hour class action, noting: "[f]ee awards in class actions average around one-third of the recovery."); *Martin v. FedEx Ground Package Sys., Inc.*, No. C 06-6883 VRW, 2008 WL 5478576, at *8 (N.D. Cal. 2008) (approving attorneys' fees of one-third of common fund).

"Class Counsel is entitled to recover 'those out-of-pocket expenses that would normally be charged to a fee paying client.'" *see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 602 (N.D. Cal. 2020) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Here, the costs Class Counsel seeks to recover were reasonably incurred. The necessary out-of-pocket costs include costs in connection with experts, legal research,

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

court reporting services, travel for depositions and hearings, for the costs of notice administration associated with class certification, and other customary litigation expenses. Anderson Decl., at ¶ 68. While the Settlement permits Plaintiffs to seek up to $1,005,000.00 in costs, Plaintiffs will remove any expert costs related to the uncertified claims before seeking final approval of the settlement. *Id.; see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. at 602.

Additionally, Defendant reserves the right to challenge Class Counsel's request for fees and costs if the requests exceed the parameters established by the Settlement Agreement. SA, at ¶ 3.3.2.

As part of the final approval motion, Plaintiffs' counsel will request approval of the attorneys' fees and costs described herein and in the Settlement Agreement, which will be heard at the final approval hearing. Accordingly, the Court need not decide the fees and costs at this time, but only authorize the Notice of Settlement to inform Settlement Class Members that counsel will seek fees and costs up to one third of the Gross Settlement Amount in fees, plus actual litigation costs.

## IX. THE CLASS REPRESENTATIVE ENHANCEMENT AWARDS ARE FAIR AND APPROPRIATE

Plaintiffs will each request payment of an enhancement award from the non-reversionary Gross Settlement Amount in the amount of $15,000.00 in addition to whatever payment they are otherwise entitled to receive as a Settlement Class Member. SA, at ¶ 3.3.1. The proposed enhancement awards are reasonable compensation given the time and effort that Plaintiffs devoted to this case, the valuable assistance they provided to counsel, and the fact that they entered into a general release of claims that is broader than the release of the Settlement Class. Anderson Decl., at ¶ 69-70; Declaration of Pamela Stewart in Support of Plaintiffs' Motion for Preliminary Approval of Class and PAGA Representative Action Settlement ("Stewart Decl."), at ¶ 33-36; Declaration of Zulekha Abdul in Support of Plaintiffs' Motion for Preliminary Approval of Class and PAGA Representative Action Settlement ("Abdul Decl."), at ¶ 34-36; SA, at ¶ 3.3.1.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

21

Plaintiffs provided invaluable assistance to Plaintiffs' counsel and the Settlement Class Members in this case, including responding and helping to draft written discovery, providing factual background for mediation and the operative complaint, reviewing the relevant documents, participating in phone calls with Plaintiffs' counsel, answering oral questions during a deposition, sitting in on other depositions, gathering highly relevant documents, assisting with experts, reviewing the settlement documents, attending a settlement conference, and attending the mediation. *Id.* Plaintiffs agreed to participate in this case with no guarantee of personal benefit. *Id.* Further, Plaintiffs agreed to undertake the financial risk of serving as class representatives and exposed themselves to the risk of negative publicity by anyone who opposed this case. *Id.* Finally, this litigation spanned five years and Plaintiffs remained in contact and committed to this class action throughout that time period. *Id.*

Moreover, the requested enhancement award for Plaintiffs falls within the range of incentive payments typically awarded to class representatives in similar class actions. *See, e.g.*, *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV- 1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. 2011) (approving $11,250.00 service award to each of the two class representatives in a trucker meal break class action); *Ross v. U.S. Bank Nat. Ass'n*, No. C07-02951SI, 2010 WL 3833922, at *2 (N.D. Cal. 2010) (approving $20,000.00 enhancement award to class representative in California wage-and-hour class action settlement); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) (approving service awards in the amount of $10,000.00 each from a $300,000.00 settlement fund in a wage/hour class action); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. 2010) (approving $25,000.00 enhancement award to class representative in California wage-and-hour class action settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 n. 8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class"); *Brotherton v. Cleveland,* 141 F.Supp.2d

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

907, 913–14 (S.D. Ohio 2001) (approving an award of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in association with [the] litigation"); *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 300 (N.D. Cal. 1955) (approving an award of $50,000 for the named plaintiff).

Separate and apart from this settlement, Plaintiffs have entered into a Confidential Settlement Agreement and General Releases for their individual claims, including the uncertified race discrimination claims alleged in this Action. The basis of these claims is fully briefed throughout the pleadings in this case. The Parties can provide these agreements to the Court for an in-camera review at the Court's request. These negotiations were separate from the class and representative action settlement and did not pose a conflict with the absent class members. Anderson Decl., at ¶ 71.

## X.    CONCLUSION

For these reasons, Plaintiffs' Motion for Preliminary Approval of the Parties' Class and PAGA Representative Action Settlement should be granted.

Respectfully submitted,

DATED: August 15, 2024                  GRAHAM**HOLLIS** APC

                                     By:

                                     */s/* Hali M. Anderson
                                     GRAHAM S.P. HOLLIS
                                     HALI M. ANDERSON
                                     Attorneys for Plaintiffs
                                     PAMELA STEWART AND ZULEKHA
                                     ABDUL and aggrieved employees

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT