1  GRAHAMHOLLIS APC
2  Graham S.P. Hollis (SBN 120577)
   ghollis@grahamhollis.com
3  Hali M. Anderson (SBN 261816)
   handerson@grahamhollis.com
4  3555 Fifth Avenue, Suite 200
5  San Diego, California 92103
6  Telephone: 619.692.0800
   Facsimile: 619.692.0822
7
8  Attorneys for Plaintiffs PAMELA STEWART
   and ZULEKHA ABDUL
9
10

11          **UNITED STATES DISTRICT COURT**
12         **SOUTHERN DISTRICT OF CALIFORNIA**

13  PAMELA STEWART and ZULEKHA          Case No.: 3:19-cv-02043-AGS-DDL
14  ABDUL, individually and on behalf of
    all similarly situated and aggrieved   **MEMORANDUM IN SUPPORT OF**
15  employees of Defendants in the State of **PLAINTIFFS' AMENDED MOTION**
    California,                             **FOR PRELIMINARY APPROVAL OF**
16                                          **CLASS AND PAGA**
17              Plaintiffs,                 **REPRESENTATIVE ACTION**
                                            **SETTLEMENT**
18       v.
19
20  QUEST DIAGNOSTICS CLINICAL           Date:       May 8, 2025
    LABORATORIES, INC. and DOES 1       Time:       10:00 a.m.
21  THROUGH 50, inclusive,
22                                       Complaint Filed: September 13, 2019
             Defendants.                 Judge: Hon. Andrew G. Schopler
23
24
25
26
27
28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION
SETTLEMENT

GRAHAMHOLLIS APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

## **Table of Contents**

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND ............................................................................................ 2

    A. THE PARTIES ....................................................................................... 2

    B. PROCEDURAL SUMMARY ................................................................ 3

III. SUMMARY OF THE CLAIMS AND DEFENSES ........................................ 6

    A. REST PERIOD CLAIMS ....................................................................... 6

    B. UNTIMELY PAYMENT OF FINAL WAGES CLAIMS (REST PERIOD PREMIUMS) ................................................................ 7

    C. WAGE STATEMENT CLAIMS (REST PERIOD PREMIUMS) ................ 7

    D. PAGA PENALTY CLAIMS (REST PERIODS AND DERIVATIVE CLAIMS) ........................................................................... 8

    E. DEFENDANT'S DEFENSES ................................................................. 8

    F. REASONABLENESS OF THE SETTLEMENT ACHIEVED ................. 9

IV. SUMMARY OF THE PROPOSED SETTLEMENT ....................................... 9

    A. SETTLEMENT CONSIDERATION AND ALLOCATION .................... 10

    B. SETTLEMENT ALLOCATION FORMULA ....................................... 10

    C. NOTICE PROCEDURES .................................................................... 11

    D. TIMING OF SETTLEMENT DISBURSEMENTS ............................... 12

    E. TAX TREATMENT .............................................................................. 13

V. THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES ................................................................. 13

    A. THE SETTLEMENT CLASS IS NUMEROUS ................................... 14

    B. COMMONALITY ................................................................................. 14

    C. PLAINTIFF STEWART'S CLAIMS ARE TYPICAL OF THE CLASS .................................................................................................. 15

    D. PLAINTIFF STEWART WILL ADEQUATELY REPRESENT THE CLASS .................................................................................................. 15

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

i

| | | |
|---|---|---|
| | E. | PREDOMINANCE AND SUPERIORITY ................................. 16 |
| VI. | | THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................. 17 |
| VII. | | PRELIMINARY APPROVAL SHOULD BE GRANTED ..................................... 18 |
| | A. | THE SETTLEMENT IS THE RESULT OF SERIOUS, INFORMED, AND NON-COLLUSIVE NEGOTIATIONS ............................................. 18 |
| | B. | THE DISCOVERY AND INVESTIGATIONS WERE EXTENSIVE ........ 18 |
| | C. | THE RISKS INHERENT IN CONTINUED LITIGATION ARE GREAT ......................................................................................... 19 |
| | D. | THE SETTLEMENT IS A REASONABLE COMPROMISE OF CLAIMS ....................................................................................... 20 |
| | E. | PLAINTIFFS' COUNSEL IS EXPERIENCED IN SIMILAR WAGE-AND-HOUR LITIGATION ...................................................... 20 |
| | F. | THE NOTICE OF SETTLEMENT CONFORMS TO ALL APPLICABLE STATUTES AND RULES .......................................... 20 |
| VIII. | | THE ATTORNEYS' FEE ALLOCATION UNDER THE SETTLEMENT AGREEMENT IS FAIR .......................................................................................... 22 |
| IX. | | THE CLASS REPRESENTATIVE ENHANCEMENT AWARDS ARE FAIR AND APPROPRIATE................................................................................... 23 |
| X. | | CONCLUSION .................................................................................................... 25 |

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

ii

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bond v. Ferguson Enterprises, Inc.*,
  No. 1:09-CV- 1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. 2011) .....................24

*Brotherton v. Cleveland*,
  141 F.Supp.2d 907 (S.D. Ohio 2001) .........................................................24

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................17

*Collins v. Cargill Meat Solutions Corp.*,
  274 F.R.D. 294 (E.D. Cal. 2011) ..............................................................14

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..............24

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................14, 15

*Lefevre v. Five Star Quality Care, Inc.*,
  No. 515CV01305VAPSPX, 2021 WL 2389884 (C.D. Cal. Jan. 7, 2021) .................17

*Local Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) .................................................................16

*Martin v. FedEx Ground Package Sys., Inc.*,
  No. C 06-6883 VRW, 2008 WL 5478576 (N.D. Cal. 2008)....................................22

*Mendez v. R+L Carriers, Inc.*,
  No. C 11-2478 CW, 2012 WL 5868973 (N.D. Cal. Nov. 19, 2012)...........................16

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .............................................................17, 19

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .................................................................14

///

TABLE OF AUTHORITIES

*Romero v. Producers Dairy Foods, Inc.*,

    No. 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. 2007)....................................22

*Ross v. U.S. Bank Nat. Ass'n*,

    No. C07-02951SI, 2010 WL 3833922 (N.D. Cal. 2010) ............................................24

*Ruiz v. XPO Last Mile*,

    No. 5CV2125 JLS (KSC), 2016 WL 4515859 (S.D. Cal. Feb. 1, 2016) ...................16

*Schneider v. Chipotle Mexican Grill, Inc.*,

    336 F.R.D. 588 (N.D. Cal. 2020)........................................................................22, 23

*Schulz v. Qualxserv*,

    No. 09-CV-17-AJB MDD, 2012 WL 1439066 (S.D. Cal. Apr. 26, 2012) ................16

*Singer v. Becton Dickinson & Co.*,

    No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. 2010) .....................22, 24

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) .....................................................................................15

*Stuart v. Radioshack Corp.*,

    No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. 2010) ......................................22

*In re Syncor ERISA Litig.*,

    516 F.3d 1095 (9th Cir. 2008) ...................................................................................17

*Tourgeman v. Collins Fin. Servs., Inc.*,

    No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) .............15

*Van Vranken v. Atlantic Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1955) ...........................................................................24

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011)...........................................................................................14, 15

*In re Wireless Facilities, Inc. Securities Litigation II*,

    253 F.R.D. 607 (S.D. Cal. 2008) ...............................................................................13

iv

TABLE OF AUTHORITIES

*Wren v. RGIS Inventory Specialists*,

    No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .........................17

*Zinser v. Accufix Research Inst., Inc.*,

    253 F.3d 1180 (9th Cir. 2001) ..................................................................................16

**Statutes**

California Business and Professions Code § 17200. ..........................................................3

California Labor Code § 226 ...............................................................................................7

California Labor Code § 2698. ...................................................................................... 1, 2

California Labor Code § 203 ...............................................................................................7

California Labor Code § 226.7 ............................................................................................6

California Labor Code § 2699(e)(1) ....................................................................................8

California Labor Code § 2699(f) ..........................................................................................8

California Labor Code § 2699(g) .........................................................................................8

**Other Authorities**

Fed. R. Civ. P. 23 (e)(2) ....................................................................................................17

Fed. R. Civ. P. 23(a) ................................................................................................... 13, 14

Fed. R. Civ. P. 23(a)(3) .....................................................................................................15

Fed. R. Civ. P. 23(b) ................................................................................................... 13, 14

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................20, 21

Fed. R. Civ. P. 23 ..............................................................................................................21

Fed. R. Civ. P. 23(a)(2) .....................................................................................................14

Fed. R. Civ. P. 23(a) ..........................................................................................................13

Fed. R. Civ. P. 23(b)(3) .....................................................................................................16

Fed. R. Civ. P. 23(c)(3) .....................................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Pamela Stewart and Zulekha Abdul ("Plaintiffs") seek preliminary approval of a class and representative action settlement between Plaintiffs and Defendant Quest Diagnostics Clinical Laboratories, Inc. ("Defendant") (collectively, the "Parties") for the gross settlement amount of $3,950,000.00 ("Gross Settlement Amount") for a class of approximately 5,380 individuals. The "Settlement Class"[1] is defined as: "All current and former non-exempt Patient Service Representatives of Defendant who were employed at any time in the State of California during the Class Settlement Period." The Class Settlement Period is defined as the period from September 13, 2015, to the earlier of: (1) the date of preliminary approval of the settlement; (2) October 31, 2024 (approximately 5 months from mediation); or (3) the date upon which the total number of workweeks from September 13, 2015, forward equals 800,000 workweeks. A true and correct copy of the Stipulation of Class and PAGA Representative Action Settlement is attached as **Exhibit A** (referred to as the "Settlement Agreement" or "SA") to the concurrently filed Declaration of Hali M. Anderson in Support of Plaintiffs' Amended Motion for Preliminary Approval of Class and PAGA Representative Action Settlement ("Anderson Decl."). The Settlement Agreement, in its entirety, is incorporated herein by reference. This Settlement resolves claims related to rest breaks and rest break derivate claims only.

Plaintiffs also represent a group of aggrieved employees on behalf of the State of California as a private attorney general pursuant to the Private Attorneys General Act of 2004 (codified in California Labor Code §§ 2698 *et seq.*, "PAGA") (the "PAGA Members"). The PAGA Members are Settlement Class Members who worked in any pay period from July 10, 2018, through the date of the end of the Class Settlement Period ("PAGA Settlement Period"). The Settlement Agreement is a non-reversionary settlement

///

[1] Also referred to as "Settlement Class Members."

1

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

1  and does not require the submission of a claim form.SA, at ¶ 3.2.1. Employer-side payroll
2  taxes are to be paid by Defendant in addition to the Gross Settlement Amount. *Id.* Subject
3  to court approval, the "Net Settlement Amount" of at least $1,475,647.33, will be
4  distributed to Participating Settlement Class Members, with a portion of that distributed as
5  PAGA penalties to the PAGA Members.

| **Gross Settlement Amount** | **$3,950,000.00** |
|---|---|
| Attorneys' Fees | (up to $1,316,666.67) |
| Litigation Costs | (up to $1,005,000.00) |
| Settlement Administrator Costs | (up to $22,686.00) |
| Class Representative Enhancement Awards | (up to $30,000.00)[2] |
| PAGA Payment | ($100,000.00) |
| **Net Settlement Amount** | **$1,475,647.33** |

12      Because the settlement is fair and reasonable, was negotiated at arm's length
13  between counsel following extensive investigation and discovery, was reached after
14  participation in a full-day mediation, and is well within the zone of reasonableness,
15  Plaintiffs request entry of an order: (1) preliminarily approving the settlement; (2)
16  conditionally certifying the class for settlement purposes; (3) approving the Court
17  Approved Notice of Class and PAGA Action Settlement and Hearing Date for Final Court
18  Approval ("Notice of Settlement"), attached as **Exhibit 1** to the Settlement Agreement, to
19  be distributed to Settlement Class Members; (4) appointing Simpluris, Inc. ("Settlement
20  Administrator") to administer the settlement and notice process; and (5) scheduling a
21  hearing for final approval after completion of the notice process. Anderson Decl., at ¶ 7.

## II.    BACKGROUND

### A. THE PARTIES

24      Defendant is a clinical laboratory and provider of diagnostic information services
25  operating throughout California with its headquarters in New Jersey. Defendant offers
26  ///

27  _____
[2] $15,000.00 to each Plaintiff.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION
SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

phlebotomy services, drug testing, and specialized testing, such as for the COVID-19 virus.

Plaintiff Stewart worked for Defendant from April 25, 2011, until June 7, 2022. Anderson Decl., at ¶ 18. Plaintiff Abdul worked for Defendant from August 7, 2017, until May 20, 2020. *Id.* Both Plaintiffs are Black/African American and worked for Defendant as Patient Service Representative 1s in San Deigo, California. Plaintiffs' job duties included drawing quality blood samples from patients and preparing those specimens for lab testing. *Id.*

Plaintiffs allege that current and former non-exempt Patient Service Representatives of Defendant in California—including Plaintiffs, experienced various violations of California's wage and hour laws. *Id.*, at ¶ 19.

Based on the discovery produced, as well as the terms of the Settlement Agreement, it is believed that the putative Class consists of approximately 5,380 Settlement Class Members. Anderson Decl., at ¶ 20; SA, at ¶ 3.2.2.

## B. PROCEDURAL SUMMARY

On August 14, 2019, Plaintiff Stewart submitted a letter to the California Labor and Workforce Development Agency ("LWDA") stating her intent to seek civil penalties against Defendant for violations of the California Labor Code ("Labor Code"), as well as the applicable Industrial Welfare Commission ("IWC") Wage Order. Anderson Decl., at ¶ 21.

On September 13, 2019, Plaintiff Stewart filed her individual and class action complaint against Defendant in San Diego Superior Court. Plaintiff Stewart's complaint alleged: (1) Failure to Prevent Discrimination; (2) Racial Discrimination; (3) Wrongful Failure to Promote Due to Racial Discrimination; (4) Failure to Provide Equal Pay Based on Race; (5) Failure to Provide Rest Periods; and (6) violations of California's Unfair Competition Law ("UCL"), codified in California Business and Professions Code sections 17200, *et seq. Id.*, at ¶ 22.

On October 23, 2019, Defendant filed a Notice of Removal, at which time the case

///

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1  was removed to this Court. *Id.*, at ¶ 23.

2      On February 12, 2020, Plaintiff Stewart amended her complaint, adding Zulekha
3  Abdul as a named plaintiff, and one additional cause of action for PAGA penalties based
4  on the allegations set forth in the original complaint. *Id.*, at ¶ 24. On June 11, 2021,
5  Defendant filed a Motion to Strike Plaintiffs' PAGA Claims. *Id.*, at ¶ 25; ECF 86.

6      On October 5, 2022, the Court certified the following California Class: All of
7  Defendant's non-exempt California Patient Service Representatives who were not
8  compensated with one hour of pay for all instances where they did not receive a duty-free
9  and uninterrupted 10-minute rest period consistent with California law, any time between
10 September 13, 2015, and the date of judgment. *Id.*, at ¶ 26; ECF 158. The Court declined
11 to certify the first five causes of action related to race discrimination, so those claims
12 remained on an individual basis only. The Court also declined to strike Plaintiffs' PAGA
13 Claims. *Id.* On October 19, 2022, Defendant filed a Motion for Reconsideration of the
14 Court's Order on Class Certification and the Motion to Strike. *Id.*, at ¶ 25; ECF 161.
15 Plaintiffs opposed this Motion. *Id.*, at ¶ 27; ECF 164.

16     On October 25, 2022, Plaintiffs filed a Motion for Leave to File Second Amended
17 Complaint, as well as a Motion to Amend the Class Certification Order, seeking to amend
18 the Complaint and certify wage statement and waiting time penalty claims derivative of the
19 certified rest break claims. *Id.*, at ¶ 28; ECF 162, 163. On September 19, 2023, the Court
20 denied both Defendant's Motion for Reconsideration and Plaintiffs' Motions to Amend.
21 *Id.*, at ¶ 29; ECF 219.

22     On October 3, 2023, Defendant filed a Petition for Permission to Appeal. *Id.*, at ¶
23 30; ECF 222. Plaintiffs opposed this Petition.

24     On October 6 and 27, 2023, the Parties exchanged Expert Disclosures. Following
25 the disclosures, the Parties took the depositions of each party's respective experts. *Id.*, at ¶
26 31.

27     On November 23, 2023, the Ninth Circuit Court of Appeal denied Defendant's
28 ///

4

Petition. *Id.*, at ¶ 32.

On December 18, 2023, Defendant filed a Motion for Summary Judgment and a Motion to Strike Experts. *Id.*, at ¶ 33; ECF 240 and 241. Plaintiffs opposed these Motions. *Id.*, at ¶ 31; ECF 244 and 245.

On February 13, 2024, the Parties participated in a Mandatory Settlement Conference with the Honorable Magistrate Judge David D. Leshner. *Id.*, at ¶ 34. The Parties did not settle. *Id.*

In or about March 2024, the Parties agreed to attend a private mediation. Prior to mediation, Plaintiffs' counsel conducted significant formal and informal discovery, including, numerous telephonic conferences with Plaintiffs; inspection and analysis of hundreds of pages of documents and other information produced by Plaintiffs and Defendant; analysis of work-related data from a sample of Settlement Class Members and PAGA Members; and analysis of the legal positions taken by Defendant; investigation into the viability of class treatment of the claims asserted in the action; analysis of potential class-wide damages, including information sufficient to understand Defendant's potential defenses to Plaintiffs' claims; research of the applicable law with respect to the claims asserted in the amended complaint and the potential defenses thereto; and assembling and analyzing of data for calculating damages. *Id.*, at ¶ 35. Furthermore, in support of Plaintiffs' motion for class certification, Plaintiffs retained multiple experts and consultants, including Dr. Dwight D. Steward, an economist and statistician to analyze Defendant's time and pay records; Dr. Jon Krosnick, a professor of communication and political science at Stanford University, to provide opinions on whether a reliable survey can be conducted of some employees of Defendant; and Sean C. Chasworth, a data scientist and statistician specializing in wage-and-hour and other employment litigation. *Id.*

On June 3, 2024, the Parties participated in a full-day mediation with Eve Wagner, who is a full-time mediator with extensive experience in California wage and hour lawsuits. *Id.*, at ¶ 36. The Parties were eventually able to reach the broad terms of an agreement and

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

executed a longform Settlement Agreement on August 15, 2024. *Id.*

At the time of settlement, the Parties' Final Pretrial Conference was set for September 13, 2024. *Id.*, at ¶ 37. Thus, the Parties were nearly on the eve of trial.

Pursuant to the terms of the Settlement Agreement, Plaintiffs will file a supplemental PAGA notice, if needed, and then a Second Amended Complaint that adds the derivative rest break claims. Anderson Decl., at ¶ 38; SA, at ¶ 3.1.

## III.    SUMMARY OF THE CLAIMS AND DEFENSES

Plaintiffs' proposed Settlement resolves claims for missed rest periods and derivative violations only on behalf of all current and former non-exempt Patient Service Representatives of Defendant who were employed in the State of California during the Class Settlement Period. Anderson Decl., at ¶ 39. The Class Settlement Period spans from September 13, 2015 to the earlier of: (1) the date of preliminary approval of the settlement; (2) October 31, 2024 (approximately 5 months from mediation); or (3) the date upon which the total number of workweeks from September 13, 2015, forward equals 800,000 workweeks. SA, at ¶ 1.4.

### A. REST PERIOD CLAIMS

Pursuant to Labor Code section 226.7, and the applicable IWC Wage Order, Defendant failed to provide Plaintiffs and the Settlement Class Members with the opportunity to take an off-duty, uninterrupted, ten-minute rest period for every four hours worked or major fraction thereof. The applicable IWC Wage Order states, "[e]very employer shall authorize and permit employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."

Plaintiffs alleged that Defendant failed to authorize and permit Plaintiffs and Settlement Class Members to take ten-minute rest periods for every four-hour work period or major fraction thereof. Anderson Decl., at ¶ 40. Specifically, Plaintiffs alleged that

///

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Defendant failed to adopt and implement a policy that authorized and permitted Plaintiffs and Settlement Class Members to take duty-free, ten-minute rest periods for every four-hour work period or major fraction thereof. Instead, Defendant consistently failed to authorize and permit rest periods by imposing strict productivity and urgency goals while also understaffing its Patient Service Centers. Moreover, Defendant failed to relieve Plaintiffs and Settlement Class Members of all duties during their rest periods, thereby regularly requiring Plaintiffs and Settlement Class Members to meet productivity and urgency goals and to remain on duty until any patients waiting had been serviced. As such, Plaintiffs and Settlement Class Members were unable to take their rest periods due to their workloads, Defendant's scheduling, and Defendant's policies and expectations. When they were able to take rest periods, they were frequently interrupted. Despite being unable to take rest periods, Defendant failed to pay rest period premiums. Of the few rest period premiums that were paid, many were paid at the incorrect rate, further supporting the fact that Defendant had no real practice of paying rest period premiums. *Id.*

## B. UNTIMELY PAYMENT OF FINAL WAGES CLAIMS (REST PERIOD PREMIUMS)

As a result of Defendant's failure to pay Plaintiffs and the Settlement Class Members for rest period premiums, Plaintiffs allege that Defendant violated Labor Code section 203, which provides "if an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty. . ." for up to 30 days. Labor Code § 203.

## C. WAGE STATEMENT CLAIMS (REST PERIOD PREMIUMS)

California Labor Code section 226 obligates employers, semi-monthly or at the time of each payment to furnish an "accurate" itemized wage statement in writing showing, among other things: the gross wages earned by the employee, the total hours worked by the employee; and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. Plaintiffs

///

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

7

allege that, due to Defendant's failure to provide employees with lawful off-duty rest periods and pay rest period premiums, the wage statements issued by Defendant did not indicate the correct amount of gross wages earned, the correct number of hours worked, the correct net wages earned, or the correct rate. Anderson Decl., at ¶ 42. Furthermore, when Defendant did pay rest period premiums, many of them were paid at the incorrect rate of pay. *Id.*

## D. PAGA PENALTY CLAIMS (REST PERIODS AND DERIVATIVE CLAIMS)

PAGA allows an aggrieved employee to bring suit against an employer for violations of most Labor Code provisions. *See* Labor Code § 2699(g). Wherever the Labor Code gives the LWDA discretion to assess a civil penalty, a court is authorized to exercise the same discretion. Labor Code § 2699(e)(1). The statute of limitations for PAGA suits is one year. An employee who prevails in an action brought under PAGA is entitled to an award of reasonable attorneys' fees and costs. The penalties available under PAGA are those provided in the underlying Labor Code provision that is violated or, if no penalty is listed, those provided by PAGA itself. Where the Labor Code does not provide for a penalty, PAGA establishes a civil penalty of $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation. Labor Code § 2699(f). For actions filed prior to June 19, 2024, , 75% of the penalties are distributed to the LWDA, and 25% is distributed to the aggrieved employees.

Plaintiffs allege that by virtue of each of Defendant's foregoing Labor Code violations, Plaintiffs and the Settlement Class Members are, in addition to other remedies, entitled to civil penalties under PAGA. Anderson Decl., at ¶ 43.

## E. DEFENDANT'S DEFENSES

Throughout the course of litigation, Defendant has maintained and still maintains that it has complied with California law in all respects, denies all liability of any kind associated with the claims and allegations, and further denies that Plaintiffs, the Settlement

///

8

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Class Members, or the PAGA Members are entitled to any relief. Anderson Decl., at ¶ 44. Defendant also denies that these allegations are appropriate for class or representative treatment for any purpose other than the settlement. *Id.* Defendant also contends that at all times, its policies, practices and procedures complied with California law. *Id.*

Defendant argued that its rest period policies were compliant with California law, that they provided and made available ten-minute rest breaks to all Class Members, and that the Class Members did in fact take their required rest periods. Thus, whether Class Members missed their rest periods would turn on individualized issues and this Action was, therefore, ripe for decertification. *Id.*, at ¶ 45. Defendant further asserted that Plaintiffs PAGA claims largely failed under the doctrine of res judicata due to a prior settlement of PAGA claims against Defendant's parent company. *Id.*, at ¶ 46. At the time the Parties reached a settlement, Defendant had a pending Motion for Summary Judgment, which had been fully briefed. Defendant also stated that it might potentially file a Motion for Decertification if the Court denied summary adjudication. *Id.*, at ¶ 47.

In considering these significant risks and others, as well as the time, expense and cost of litigation, trial and appeals, the Parties agreed that settlement was appropriate, and that the settlement here is fair and reasonable.

## F. REASONABLENESS OF THE SETTLEMENT ACHIEVED

In coming to a determination that this settlement is fair and reasonable and in the best interests of the Settlement Class, Plaintiffs took into consideration the risks of summary judgment; de-certification; compulsion to arbitration; reduction or denial of wage statement and/or PAGA penalties; and other potential defenses of Defendant. Anderson Decl., at ¶ 48-49. If Defendant prevailed on any of these defenses, the claims of the Class would potentially be worth nothing. The settlement, given the risks, is fair and reasonable.

## IV. SUMMARY OF THE PROPOSED SETTLEMENT

Under the terms of the Settlement Agreement, Defendant will be released from all class and PAGA claims related to Defendant's alleged failure to provide rest periods or the

///

9

GrahamHollis APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

requisite premiums, as asserted in the action or the anticipated Second Amended Complaint, in exchange for Defendant's agreement to pay a non-reversionary Gross Settlement Amount of $3,950,000.00. The release is carefully tailored to the rest period and rest-period derivative claims at issue in this case. SA, at ¶ 1.28; 1.29.

## A. SETTLEMENT CONSIDERATION AND ALLOCATION

The Gross Settlement Amount includes: (1) the fees and expenses of the Settlement Administrator; (2) Plaintiffs' counsel's attorney fees not to exceed 33.33% of the Gross Settlement Amount, i.e., $1,316,666.67; (3) litigation expenses and costs not to exceed $1,005,000.00; (4) an enhancement award to each of the named Plaintiffs of up to $15,000.00; and (5) PAGA penalties in the amount of $100,000.00 which are to be distributed 75% to the LWDA, and 25% to the PAGA Members. SA, at ¶ 3.2-3.3. After all Court-approved deductions from the Gross Settlement Amount, the remaining amount (i.e., the Net Settlement Amount), which consists of at least $1,475,647.00, will be distributed to the Participating Settlement Class Members, and $25,000.00 portion of the PAGA Payment will be distributed to the PAGA Members. SA, at ¶ 3. Applicable employer-side payroll taxes will be paid by Defendant separate from the Gross Settlement Amount. SA., at ¶ 3.4.1.

## B. SETTLEMENT ALLOCATION FORMULA

Individual payments to the Settlement Class Members from the class-portion of the settlement will be calculated and apportioned on a *pro rata* basis, based on the number of Eligible Workweeks each Participating Class Member worked during the Class Settlement Period (the "Individual Settlement Payments"). SA, at ¶ 3.3.4. To determine each Settlement Class Member's estimated "Individual Settlement Payment," the Settlement Administrator will use the following formula: estimated Individual Settlement Payment = individual Eligible Workweeks ÷ all Settlement Class Member Eligible Workweeks × Net Settlement Amount. *Id.*

Any portion of the PAGA Payment not approved by the Court shall be added to the

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

Net Settlement Amount and any additional amount ordered by the Court shall be paid from the Gross Settlement Amount. SA., at ¶ 3.3.5. Additionally, 25% of the PAGA Payment is to be distributed to the PAGA Members as Individual PAGA Payments and shall be distributed based on a *pro rata* share based on the number of Eligible Pay Periods each PAGA Member worked during the PAGA Settlement Period. *Id.*

**C. NOTICE PROCEDURES**

Within 30 calendar days of the court granting preliminary approval of the Settlement Agreement (the "Preliminary Approval Date"), Defendant shall provide the Settlement Administrator with an updated list of Settlement Class Members containing Class Data for each Settlement Class Member, including their name, last known address, social security number, and number of Eligible Workweeks and Eligible Pay Periods or data sufficient for the Settlement Administrator to determine Eligible Workweeks and Eligible Pay Periods. SA, at ¶ 1.3, 4.2.1. The Class Data shall be based on Defendant's personnel and payroll records and provided in a format acceptable to the Settlement Administrator. *Id.*

Within 21 calendar days of receiving the Class Data, the Settlement Administrator shall send via United States first class mail the Notice of Settlement to the Settlement Class Members. SA, at ¶ 4.2.2. The Notice of Settlement will be in substantially the form as the one attached as **Exhibit 1** to Settlement Agreement. The Notice of Settlement shall advise Settlement Class Members of their options, which include filing an objection to the Settlement and receiving an Individual Settlement Payment and an Individual PAGA Payment (if applicable); or taking no action and receiving an Individual Settlement Payment and an Individual PAGA Payment (if applicable). *Id.*, at 4.1.4.

The Notice of Settlement will also inform the Settlement Class Members of their right to object to the settlement. SA, at ¶ 4.3.2. Any Settlement Class Member who wishes to object to the settlement may submit a written objection to the Settlement Administrator no later than 45 days following the date on which the Settlement Administrator first mails the Notice of Settlement to the Settlement Class Members ("Response Deadline"). *Id.*, at ¶

///

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

1.31. Alternatively, Settlement Class Members may also seek Court permission to object to the Settlement Agreement by appearing at the final approval hearing, either on their own or through an attorney. *Id.*, at ¶ 4.4.

Settlement Class Members who do not timely request exclusion from the settlement will be deemed to be Participating Class Members without having to submit a claim form or take any other action. *Id.*, at ¶ 4.3.2. To opt-out from the settlement, the Settlement Class Member must submit a written opt-out request from the settlement to the Settlement Administrator ("Opt-Out Request"), postmarked no later than the Response Deadline. *Id.*, at ¶ 4.3.1.

In the event that any Notice of Settlement is returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall run a skip-trace using that Settlement Class Member's social security number in an effort to attempt to ascertain the current address of the Settlement Class Member. If such an address is ascertained, the Settlement Administrator shall re-mail the Notice of Settlement within 10 calendar days. If alternative addresses are obtained for a Settlement Class Member, the Settlement Administrator shall promptly re-send the Notice of Settlement to the alternative addresses. *Id.*, at ¶ 4.2.2

## D. TIMING OF SETTLEMENT DISBURSEMENTS

Defendant shall pay the Gross Settlement Amount into the Qualified Settlement Fund set up, held, and controlled by the Settlement Administrator within 21 calendar days after the Effective Date or within 7 days of the Settlement Administrator providing all information necessary for Defendant to transfer funds to the Qualified Settlement Fund, whichever is later. *Id.*, at ¶ 4.9.1.

Settlement Class Members will have 180 days to cash their settlement checks. *Id.*, at ¶ 4.10. After the 180 days has expired, the Settlement Administrator shall void the uncashed settlement checks and the amount of the uncashed settlement payments shall be transmitted to the State of California, to be held and disposed of by the Controller in accordance with California's Unclaimed Property Law for the benefit of the Participating

///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

12

Class Members and PAGA Members who did not cash the settlement checks until such time that they claim their property. *Id.* The Parties agree that this disposition results in no "unpaid residue," as the entire Net Settlement Amount will be paid out to Participating Class Members, whether or not they timely cash their Individual Settlement Payments. *Id.*

## E. TAX TREATMENT

The Settlement Agreement provides all Individual Settlement Payments to Participating Class Members shall be allocated as follows for tax purposes: 40% for alleged unpaid wages; 30% for interest, and; 30% for penalties. The portion of the Individual Settlement Payment attributable to unpaid wages will be subject to regular and/or applicable payroll and income tax withholdings (for the employee portion only) and will be reported on an IRS Form W-2. SA., at ¶ 3.4.1. Defendant will separately and additionally pay their share of employer payroll taxes on the sum allocated to wages. *Id.*, at 3.2.1.

All Individual PAGA Payments shall be allocated as 100% penalties, for which a 1099 will be issued if required. *Id.*, at ¶ 3.4.2. PAGA Members will be responsible for paying all taxes due on their Individual PAGA Payments. *Id.*

## V.  THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES

Parties may settle a class action and stipulate that a defined class be conditionally certified for settlement purposes only. *In re Wireless Facilities, Inc. Securities Litigation II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). "A conditionally-certified class must still stratify Rule 23(a) and (b) requirements." *Id.* To conditionally certify a settlement class, a court must look at these factors: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Id.*; Fed. R. Civ. Proc. 23(a). Additionally, "plaintiffs must establish one of the following: (1) there is a risk of inconsistent or unfair adjudication if parties proceed with separate

///

13

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

actions; (2) the defendant acted or refused to act on grounds generally applicable to the class, making injunctive or declaratory relief appropriate to the class as a whole; or (3) common questions of law or fact predominate and class resolution is superior to other available methods for fair and efficient adjudication of the controversy." *Id.*; Fed. R. Civ. Proc. 23(b).

On October 5, 2022, the Court certified the following California class: "All of Defendant's non-exempt California Patient Service Representatives who were not compensated with one hour of pay for all instances where they did not receive a duty-free and uninterrupted 10-minute rest period consistent with California law, any time between September 13, 2015, and the date of judgment." Anderson Decl., at ¶ 26. For settlement purposes only, Plaintiffs ask the Court to certify the Class as defined in the Settlement Agreement. The Parties define the Settlement Class in the Settlement Agreement as "all current and former non-exempt Patient Service Representatives of Defendant who were employed at any time in the State of California during the Class Settlement Period." SA., at ¶ 1.34. The Parties have stipulated to the filing of a Second Amended Complaint as part of this Settlement, adding claims are wholly derivative of the already-certified rest period claims.

## A. THE SETTLEMENT CLASS IS NUMEROUS

The Settlement Class here consists of at least 5,380 individuals; hence, numerosity is satisfied. *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (numerosity satisfied over 40 class members).

## B. COMMON QUESTIONS OF LAW AND FACT PREDOMINATE

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." This requirement "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Even a single common question satisfies this requirement. *Dukes,* 131 S. Ct. at 2556 (reference omitted); *see also, Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

///

14

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

Here, common questions of law or fact predominate as to each of the claims alleged by Plaintiff Stewart on behalf of the Settlement Class because this action concerns Plaintiff Stewart's allegations that Defendant's **common policies and practices** failed to provide Settlement Class Members with compliant rest periods and associated premium payments, failed to provide accurate itemized wage statements with rest period premiums, and failed to timely pay wages (rest period premiums) upon termination.

## C. PLAINTIFF STEWART'S CLAIMS ARE TYPICAL OF THE CLASS

Typicality requires that "the claims or defenses of representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Proc. 23(a)(3). Typicality does not require identical claims between class representatives and absent class members. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The focus is on "whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 n.5 (2011).

Here, Plaintiff Stewart's claims arise from the same general set of facts and legal theories as the putative class members' claims. Plaintiff and the putative class members are all Patient Service Representatives in California subject to the same policies, staffing guidelines, and productivity and urgency goals. Typicality is met.

## D. PLAINTIFF STEWART WILL ADEQUATELY REPRESENT THE CLASS

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other Class Members, and (2) can the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020; *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003). There is a presumption of adequate representation of counsel, and absent contrary evidence, potential objections to class counsel's adequacy should be taken with a "grain of salt." *Tourgeman v. Collins Fin. Servs., Inc*., No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *13 (S.D. Cal. Oct. 21, 2011).

///

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

Here, Plaintiff Stewart responded to written discovery, provided facts and relevant information regarding issues in this matter from its inception, made herself available for a full-day deposition, and confirmed under oath and in writing that she understands her obligations to the class in this case. Plaintiff is not aware of any potential conflicts that exist between herself and the class. Anderson Decl., at ¶ 70. As outlined in the Anderson Declaration, Plaintiff Stewart's counsel has significant expertise in the area of wage and hour law and class actions and will adequately represent the Class. Anderson Decl., at ¶¶ 9-16.

## E. PREDOMINANCE AND SUPERIORITY

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001). District courts within the Ninth Circuit have overwhelmingly found common questions predominate where the theory of liability is premised in part on an allegedly unlawful corporate policy or practice. *See, e.g., Schulz v. Qualxserv*, No. 09-CV-17-AJB MDD, 2012 WL 1439066, at *8 (S.D. Cal. Apr. 26, 2012); *Ruiz v. XPO Last Mile*, No. 5CV2125 JLS (KSC), 2016 WL 4515859, at *9-10 (S.D. Cal. Feb. 1, 2016); *Mendez v. R+L Carriers, Inc.*, No. C 11-2478 CW, 2012 WL 5868973, at *13, 15-16 (N.D. Cal. Nov. 19, 2012). This case presents no exception. The second half of the Rule 23(b)(3) inquiry requires the court to determine whether class treatment is "superior" to an individual treatment of Plaintiff's claims. This requires consideration of four factors. *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186-1190 (9th Cir. 2001). These factors suggest the court should "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.* at 1190.

Litigating these claims individually against a corporate Defendant would be

///

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

16

1  unfeasible. Resolving all disputes in a single trial in this venue benefits both the class

2  members and the Defendant. Rather than having over 5,380 separate lawsuits or Labor

3  Commissioner hearings regarding the same claims, a class action resolves all individual

4  claims collectively. Additionally, this case presents no manageability concerns.

5  **VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

6        The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of

7  class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

8  However, in deciding whether to approve a proposed class action settlement, the Court

9  must first find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ.

10  P. 23 (e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

11  Importantly, there is a presumption of fairness "if the settlement is recommended by class

12  counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–

13  05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011); *Lefevre v. Five Star Quality*

14  *Care, Inc.*, No. 515CV01305VAPSPX, 2021 WL 2389884, at *3 (C.D. Cal. Jan. 7, 2021).

15  There is also "a strong judicial policy that favors settlements, particularly where complex

16  class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th

17  Cir. 2008). Applying these factors, the proposed settlement is fair, reasonable, and

18  adequate.

19        As explained above, the issues in this case were hotly contested—both legally and

20  factually. Anderson Decl., at ¶ 58. While Plaintiffs continue to believe in the merits of the

21  case, Defendant argued that it substantially complied with California's wage and hour laws,

22  and thus faced minimal exposure, if any. *Id.* Defendant asserted and would have continued

23  to assert legal and factual grounds to defend against this action. *Id.* Continued litigation

24  would be costly, time consuming, and uncertain in outcome. *Id.* There is always a risk of

25  the class being decertified, and Defendant had a pending Motion for Summary Judgment

26  and Motion to Strike Experts. By contrast, the Settlement Agreement will yield a prompt,

27  certain, and substantial recovery for Settlement Class Members, and benefits the Parties

28  ///

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION
SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

and the Court. In light of Defendant's defenses and the risks discussed herein, the Gross

Settlement Amount of $3,950,000.00 is an excellent result for a class action based solely

on rest period violations and it is well within any understanding of the "fair, reasonable,

and adequate" standard.

## VII.    PRELIMINARY APPROVAL SHOULD BE GRANTED

### A. THE SETTLEMENT IS THE RESULT OF SERIOUS, INFORMED, AND NON-COLLUSIVE NEGOTIATIONS

The Settlement Agreement was negotiated at arm's length between counsel utilizing a professional and well-respected third party neutral. Anderson Decl., at ¶ 59. Counsel for both parties was thoroughly familiar with the complex legal and factual questions at issue in this litigation. *Id*. The Settlement Agreement is a product of intensive negotiations, supported by investigation and direct exchanges of information through discovery, during the course of settlement negotiations, including a full-day mediation. *Id*.

Although Plaintiffs believed the class claims had merit and would withstand an attempt to decertify as well as summary adjudication, they recognized the potential risk, expense, and complexity posed by litigation, the uncertainty of trial, the discretionary nature of a damages award, and the reality that an appeal that can take several more years to litigate. *Id.*, at ¶ 60. The resulting Settlement Agreement was based on calculations, risk assessment, and non-collusive negotiation. *Id.* It takes the risks identified above and others into account in arriving at the non-reversionary settlement. *Id.*

### B. THE DISCOVERY AND INVESTIGATIONS WERE EXTENSIVE

Counsel for the Parties spent months prior to the mediation developing the factual record for this case, engaging in discovery and exchanges of documents and information, and ensuring that both sides were fully informed about the strengths and weaknesses of their respective positions at the mediation and during subsequent settlement negotiations. Anderson Decl., at ¶ 62. The Parties, by and through their counsel attended a full-day mediation session before Eve Wagner, an experienced and well-respected mediator, which

///

18

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

resulted in the resolution of the case on a class and representative basis. *Id*.

In addition, the Parties are represented by skilled and experienced counsel with extensive backgrounds in complex litigation and experience litigating similar wage and hour class actions. *Id.*, at ¶¶ 9–15; 63. The Settlement Agreement was reached after extensive investigation and research, calculations and risk evaluation, substantial exchanges of documents, and Plaintiffs' counsel's thorough factual investigation, which were sufficient to evaluate Defendant's defenses. *Id.* The Settlement Agreement came only after the case was thoroughly investigated by Plaintiffs' counsel. *Id*. Plaintiffs' counsel agrees that this settlement is fair, adequate, and reasonable, and in the best interests of Settlement Class Members, especially in light of the fact that it provides a considerable settlement for rest period claims only. *Id.*

## C. THE RISKS INHERENT IN CONTINUED LITIGATION ARE GREAT

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court should also consider "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial . . . ." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). As described above, Defendant has strong defenses to Plaintiffs' claims, which create a real possibility that the claims might fail on the merits. Anderson Decl., at ¶ 64. Proceeding with litigation would impose a significant risk of no recovery and substantial additional expenditures of time and resources.

Additionally, while Plaintiffs believe the case has merit, Plaintiffs and their counsel acknowledge that Defendant has grounds available for defending this action. The strength of Plaintiffs' case may have been weakened if the Court granted Defendant's motion for summary judgment, which was ultimately denied as moot, in light of the Parties' settlement. ECF 264. If settlement were not achieved, continued litigation of the claims would take a substantial amount time and possibly confer no benefit on Settlement Class Members. By contrast, the settlement will yield a prompt, certain, and substantial recovery,

///

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

which also benefits the Parties and the Court. In considering these risks, the choice was overwhelmingly in favor of settlement. Anderson Decl., at ¶ 64.

## D. THE SETTLEMENT IS A REASONABLE COMPROMISE OF CLAIMS

The Settlement Agreement represents a fair compromise given the risks and uncertainties presented by continued litigation. Defendant asserted and would have continued to assert legal and factual grounds to defend against this action, including factual and legal defenses on the merits. Moreover, continued litigation would be costly, time-consuming, and uncertain. In contrast, the Settlement Agreement ensures timely relief and substantial recovery of the Defendant's realistic exposure. Anderson Decl., at ¶ 65.

## E. PLAINTIFFS' COUNSEL IS EXPERIENCED IN SIMILAR WAGE-AND-HOUR LITIGATION

Plaintiffs' counsel is experienced in wage-and-hour class actions. Anderson Decl., at ¶¶ 9–15. Numerous state and federal courts have certified Ms. Anderson as adequate and competent class counsel in wage and hour class actions. *Id.* Ms. Anderson has dedicated her entire law practice to employment law. *Id.*, at ¶ 10.

The Parties' counsel agree that this settlement is fair, adequate, and reasonable in light of the nature of the claims, realistic risk adjusted value of damages, complexities of the case, the state of the law, and uncertainties of class certification and litigation. *Id.*, at ¶ 66. Given the risks inherent in litigation and the defenses asserted, this settlement is fair, adequate, and reasonable and in the best interests of Settlement Class Members and should be preliminarily approved. *Id.* The Settlement Agreement is also consistent with other settlements that received approval of the Courts. *Id.* Experienced counsel, operating at arm's length, have weighed the strengths and risks of the case, and endorse the proposed settlement. *Id.*, at ¶ 67. The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Id.*

## F. THE NOTICE OF SETTLEMENT CONFORMS TO ALL APPLICABLE STATUTES AND RULES

///

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

20

Federal Rule of Civil Procedure 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The notice must concisely and clearly state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*

The proposed Notice of Settlement—which the parties have already agreed to—fully informs the Settlement Class Members of the nature of the lawsuit and each Settlement Class Members' rights under the terms of the Settlement Agreement and applicable law. SA, Exh. 1. The Parties' notice plan is that the Settlement Administrator sends notice of the settlement directly to the Settlement Class Members by first-class mail 21 calendar days after receiving the Class Data. SA, at ¶ 4.2.2.

The content of the proposed Notice of Settlement fully complies with due process and Rule 23. The contents of the Notice include, among other things: (1) a straightforward table outlining the members legal rights and options in the settlement; (2) a detailed explanation of the background of the case, including relevant procedural history; (3) the terms of the settlement; (4) how to get a settlement payment; (5) an explanation of what happens if the Court approves the settlement; (6) the procedure for the member to follow in requesting exclusion from the class settlement; (7) how to object to the settlement; (8) information about the final approval hearing; and (9) how to get more information if members have questions about the settlement. SA, Exh. 1. The 45-day deadline for Settlement Class Members to opt-out or challenge the number of workweeks worked during the Settlement Class Period is reasonable, as it provides Settlement Class Members with sufficient time to do so and, if they so choose, to seek independent legal advice in the

///

21

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1   interim. SA, at ¶ 1.31.

2   **VIII. THE ATTORNEYS' FEE ALLOCATION UNDER THE SETTLEMENT**

3   **AGREEMENT IS FAIR**

4       In addition, at the time of final approval, Plaintiffs' counsel will request attorneys'

5   fees of up to 33.33% of the Gross Settlement Amount (i.e., $1,316,666.67), plus

6   reimbursement of litigation expenses and costs of up to $1,005,000.00. SA, at ¶ 3.3.2. The

7   fee amount is fair, reasonable, and represents a typical fee award in wage-and-hour class

8   actions in California. The litigation costs payment is also reasonable and based on

9   documentation, which will be discussed in Plaintiffs' Motion for Attorneys' Fees and

10  Costs, filed at the time of final approval.

11      The requested fee of approximately one-third of the Gross Settlement Amount is

12  also consistent with awards obtained in similar wage and hour class action cases approved

13  by various courts in California. *See Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010

14  WL 3155645, at *6 (N.D. Cal. 2010) (approving fee award of 1/3 of the total maximum

15  settlement amount of $4.5 million and noting that the fee award of 1/3 of the total

16  settlement was "well within the range of percentages which courts have upheld as

17  reasonable in other class action lawsuits"); *Singer v. Becton Dickinson & Co.*, No. 08-CV-

18  821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. 2010) (approving fee award of

19  33.33% of the common fund); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484

20  DLB, 2007 WL 3492841, at *4 (E.D. Cal. 2007) ( "[f]ee awards in class actions average

21  around 1/3 of the recovery."); *Martin v. FedEx Ground Package Sys., Inc.*, No. C 06-6883

22  VRW, 2008 WL 5478576, at *8 (N.D. Cal. 2008) (approving attorneys' fees of 1/3 of

23  common fund).

24      "Class Counsel is entitled to recover 'those out-of-pocket expenses that would

25  normally be charged to a fee paying client.'" *see also Schneider v. Chipotle Mexican Grill,*

26  *Inc.*, 336 F.R.D. 588, 602 (N.D. Cal. 2020) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19

27  (9th Cir. 1994)). Here, the costs Class Counsel seeks to recover were reasonably incurred.

28  ///

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

22

The necessary out-of-pocket costs include costs in connection with experts, legal research, court reporting services, travel for depositions and hearings, for the costs of notice administration associated with class certification, and other customary litigation expenses. Anderson Decl., at ¶ 68. While the Settlement permits Plaintiffs to seek up to $1,005,000.00 in costs, Plaintiffs will remove any expert costs related to the uncertified claims before seeking final approval of the settlement. *Id.; see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. at 602. Additionally, Defendant reserves the right to challenge Class Counsel's request for fees and costs if the requests exceed the parameters established by the Settlement Agreement. SA, at ¶ 3.3.2.

As part of the final approval motion, Plaintiffs' counsel will request approval of the attorneys' fees and costs described herein and in the Settlement Agreement. Accordingly, the Court need not decide the fees and costs at this time, but only authorize the Notice of Settlement to inform Settlement Class Members that counsel will seek fees and costs up to 33.33% of the Gross Settlement Amount in fees, plus actual litigation costs.

## IX. THE CLASS REPRESENTATIVE ENHANCEMENT AWARDS ARE FAIR AND APPROPRIATE

Plaintiffs will each request payment of an enhancement award from the non-reversionary Gross Settlement Amount in the amount of $15,000.00 in addition to whatever payment they are otherwise entitled to receive as a Settlement Class Member. SA, at ¶ 3.3.1. The proposed enhancement awards are reasonable compensation given the time and effort that Plaintiffs devoted to this case, the valuable assistance they provided to counsel, and the fact that they entered into a general release of claims that is broader than the release of the Settlement Class. Anderson Decl., at ¶ 69-70; Declaration of Pamela Stewart in Support of Plaintiffs' Motion for Preliminary Approval of Class and PAGA Representative Action Settlement ("Stewart Decl."), at ¶ 33-36; Declaration of Zulekha Abdul in Support of Plaintiffs' Motion for Preliminary Approval of Class and PAGA Representative Action Settlement ("Abdul Decl."), at ¶ 34-36; SA, at ¶ 3.3.1.

///

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT

Plaintiffs provided invaluable assistance to Plaintiffs' counsel and the Settlement Class Members in this case, including responding and helping to draft written discovery, providing factual background for mediation and the operative complaint, reviewing the relevant documents, participating in phone calls with Plaintiffs' counsel, answering oral questions during a deposition, sitting in on other depositions, gathering highly relevant documents, assisting with experts, reviewing the settlement documents, attending a settlement conference, and attending the mediation. *Id.* Plaintiffs agreed to participate in this case with no guarantee of personal benefit. *Id.* Further, Plaintiffs agreed to undertake the financial risk of serving as class representatives and exposed themselves to the risk of negative publicity by anyone who opposed this case. *Id.* Finally, this litigation spanned five years and Plaintiffs remained in contact and committed to this class action throughout. *Id.*

Moreover, the requested enhancement award for Plaintiffs falls within the range of incentive payments typically awarded to class representatives in similar class actions. *See, e.g.*, *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV- 1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. 2011) (approving **$**11,250.00 service award to each of the two class representatives); *Ross v. U.S. Bank Nat. Ass'n*, No. C07-02951SI, 2010 WL 3833922, at *2 (N.D. Cal. 2010) (approving $20,000.00 enhancement award to class representative); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) (approving service awards in the amount of $10,000.00 each from a $300,000.00 settlement fund); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. 2010) (approving $25,000.00 enhancement award to class representative); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 n. 8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class"); *Brotherton v. Cleveland,* 141 F.Supp.2d 907, 913–14 (S.D. Ohio 2001) (approving an award of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has

///

24

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

performed numerous tasks in association with [the] litigation"); *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 300 (N.D. Cal. 1955) (approving an award of $50,000 for the named plaintiff).

Separate and apart from this settlement, Plaintiffs have entered into Confidential Settlement Agreement and General Releases for their individual claims, including the uncertified race discrimination claims alleged in this Action. The basis of these claims is fully briefed throughout the pleadings in this case. The Parties can provide these agreements to the Court for an in-camera review at the Court's request. These negotiations were separate from the class and representative action settlement and did not pose a conflict with the absent class members. Anderson Decl., at ¶ 71.

## X.  CONCLUSION

For these reasons, Plaintiffs' Amended Motion for Preliminary Approval of the Parties' Class and PAGA Representative Action Settlement should be granted.

Respectfully submitted,

Dated: March 18, 2025

GRAHAM**HOLLIS** APC

By:

/s/ Hali M. Anderson

GRAHAM S.P. HOLLIS
HALI M. ANDERSON
Attorneys for Plaintiffs
PAMELA STEWART AND ZULEKHA
ABDUL and aggrieved employees

MEMORANDUM IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT