UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pamela STEWART, et al., individually and on behalf of all similarly situated employees of Defendants in the State of California,<br><br>                                Plaintiffs,<br>v.<br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., et al.,<br><br>                                Defendants. | Case No.: 19-cv-2043-AGS-DDL<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT (ECF 275)** |

After more than five years of intense litigation, plaintiffs Pamela Stewart and Zulekha Abdul seek preliminary approval of a settlement agreement regarding their class-action lawsuit and Private Attorney General Act representative action against defendant Quest Diagnostics Clinical Laboratories, Inc. (*See generally* ECF 275.) Plaintiffs ask the Court to: "(1) preliminarily approv[e]" this class action settlement; "(2) conditionally certify[] the class for settlement purposes; (3) approv[e] the . . . Notice of Class and PAGA Action Settlement"; "(4) appoint[] Simpluris, Inc." "to administer the settlement and notice process"; and (5) schedule a final approval hearing. (*Id.* at 8.)

## DISCUSSION

**A.     Class Action Settlement**

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Still, class actions "may be settled" "only with the court's approval." Fed. R. Civ. P. 23(e). The approval process involves two steps: (1) preliminary court approval, then, after notice to the proposed class members, (2) final approval. *See Ali v. Franklin Wireless Corp.*, No. 21-CV-00687-AJB-MSB, 2024 WL 270077, at *3 (S.D. Cal. Jan. 24, 2024). At the preliminary stage, the parties need only make a "showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the

1

class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii). If the parties make that showing, then the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.*

### 1. *Likely Approval Under Rule 23(e)(2)*

Rule 23(e)(2) requires the Court to assess whether the parties' proposal "is fair, reasonable, and adequate after considering" whether: (1) the class representatives and counsel "adequately represent[]" the class; (2) the parties negotiated the proposal "at arm's length"; (3) the proposed "relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D).

#### a. *Adequate Representation*

Determining whether the representation is "adequate" involves a two-part inquiry: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Adequacy is "usually presumed in the absence of contrary evidence." *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *13 (S.D. Cal. Oct. 21, 2011). There is no evidence to overcome that presumption. Neither the named plaintiffs nor their attorneys are "aware of any potential conflicts that exist between themselves and the class." (ECF 275-2, at 3, 19.) And the representative plaintiffs and their counsel have "vigorously" prosecuted this action for more than five years. *See Staton*, 327 F.3d at 957. So the representation is adequate.

#### b. *Arm's-Length Negotiation*

The parties also engaged in an "arm's length" negotiation. *See* Fed. R. Civ. P. 23(e)(2)(B). Before drafting this settlement proposal in the aftermath of an all-day mediation (ECF 275, at 8), the parties spent the better part of five years sparring at least at an arm's length from each other.

Nor is there evidence that the proposal is "the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs*, 955 F.2d at 1290. Three

2

"subtle signs" that suggest fraud or collusion are "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674–75 (9th Cir. 2025).

First, there is no indication that plaintiffs' counsel would receive a "disproportionate distribution of the settlement." *See id.* Plaintiffs' counsel's proposed fee is "not to exceed" 33.33%, or one-third of, the gross settlement amount. (ECF 275-2, at 33.) This is higher than the Ninth Circuit's 25% "benchmark award for attorney fees," *Staton*, 327 F.3d at 968, but it's still "well within the range of percentages which courts [in this circuit] have upheld as reasonable in other class action lawsuits," *see Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (approving fees totaling "one-third of the settlement amount"); *see, e.g.*, *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving "fees in the amount of 33.33% of the common fund"). That said, the proposed agreement also would allow plaintiffs' counsel to request up to 25.44%, or roughly one-fourth, of the gross settlement amount for litigation-expense reimbursement. (ECF 275-2, at 33.) But plaintiffs can't provide the full details of their out-of-pocket costs until the final approval stage. (ECF 275, at 29). So, although attorneys "may recover . . . those out-of-pocket expenses that would normally be charged to a fee paying client," *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (cleaned up), it's too early to evaluate plaintiffs' counsel's costs request at this stage.

Next, there is no evidence of a "clear sailing arrangement" between the attorneys, *see In re Cal. Pizza Kitchen*, 129 F.4th at 674–75, given that defense counsel reserves the right to challenge "Class Counsel's request for fees and costs" (ECF 275, at 29). So there is nothing to suggest fraudulent settlement collusion in this case. Finally, there is no "kicker" or "reverter" clause in the proposed settlement. *See In re Cal. Pizza Kitchen*,

129 F.4th at 674–75. Any uncashed settlement checks will be "held and disposed of" "in accordance with California's Unclaimed Property Law for the benefit of the" class member. (ECF 275-2, at 47.)

So none of the subtle signs of collusion are present, and it would appear the parties have negotiated this proposal at "arm's length." *See* Fed. R. Civ. P. 23(e)(2)(B).

c.  *Adequacy of Class Relief*

The class-relief adequacy assessment involves viewing "relief provided for the class" within the context of the (i) "costs, risks, and delay of trial and appeal"; (ii) "effectiveness of any proposed method of distributing relief to the class"; (iii) "terms of any proposed award of attorney's fees, including timing of payment"; and (iv) "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv), (e)(3).

Of the $3.95 million proposed gross settlement amount, roughly 5,380 class members are slated to share in an estimated $1.48 million. (ECF 275-2, at 32.) Their individual allocations will depend on how long they worked for the defendant during the relevant period. (*See id.* at 35.) So, though unlikely, if the class members were to share the settlement equally, each would receive roughly $270.

First, considering the "costs, risks, and delay of trial and appeal," the $270-per-person appears to be fair. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). Trials are expensive, so even if the plaintiffs were to win, it's likely that the attorney costs would rise without guarantee of a larger winnings pot. And, as the plaintiffs acknowledge, there are "strong defenses to Plaintiffs' claims, which create a real possibility that [plaintiffs'] claims might fail on the merits"—which would yield $0 for the class members. (*See* ECF 275, at 25.) Continued litigation also carries the risk of a renewed summary-judgment motion and a "potential[]" motion for class decertification from the defendant, which could deal a blow to plaintiffs' potential recovery. (*See* ECF 275-2, at 12–13.) Plus, the motion practice and a potential jury trial would likely delay the class members' payout, rather than arriving within two months of final settlement approval. (*See id.* at 46.) So the potential "costs,

risks, and delay of trial and appeal" counsel in favor of this settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

Second, the "proposed method of distributing relief to the class" is fair. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). It opts the members into receiving payment by default, requires the defendant to pay its portion of the associated payroll taxes, and pays class members on a pro rata basis depending upon the number of eligible weeks they worked for the defendant during the class period. (ECF 275-2, at 35–36.)

Third, the proposed attorneys' fees, as previously discussed, are appropriate.

Finally, the Court must "consider[]" "any agreement made in connection with the propos[ed]" settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv). As the plaintiffs represent, "[s]eparate and apart from this [proposed] settlement, Plaintiffs have entered into Confidential Settlement Agreement and General Releases for their individual claims." (ECF 275, at 31.) But the Court has not seen those agreements, and it cannot "consider[]" them until it does. *See* Fed. R. Civ. P. 23(e)(2). There's nothing to suggest that the separate agreements are unfair at this point, so they pose no barrier to preliminary approval. But the parties must submit the ancillary agreements, under seal if necessary, with the motion for final settlement approval.

In sum, the proposal for class relief is fair.

d. *Equitable Treatment*

The settlement must also treat the "class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This agreement does.

In calculating each class members' distribution, the settlement will divide all "individual Eligible Workweeks" by the number of "all Settlement Class Member Eligible Workweeks" and multiply that ratio by the "Net Settlement Amount." (ECF 275-2, at 35.) This equitably distributes the settlement proceeds relative to the number of weeks the class member worked—which presumptively equates to the number of break periods they weren't provided or paid for. Similarly, the $25,000 PAGA distribution (discussed in more detail below) will be administered on a pro rata basis depending upon "the number of

1  Eligible Pay Periods each PAGA Member worked during the PAGA Settlement Period."
2  (*Id.*) And if a person disagrees with her initial workweek or pay-period designation, that
3  person "may dispute" it to correct the problem. (*Id.* at 43.)

There are, however, two places in which class representatives are treated differently than the other class members: enhancement awards and claim release. But neither amounts to inappropriately inequitable treatment. The class representatives' "enhancement awards" would total $15,000 each. (ECF 275-2, at 33.) This is fair in light of the personal risk they undertook in serving as named plaintiffs in addition to their participation in "days of depositions," "multiple rounds of discovery," and settlement discussions. (ECF 275-3, at 4–5; ECF 275-4, at 4–5.) $15,000 is also well within the reasonable range of enhancement awards that other district courts have approved. *See, e.g.*, *Singer*, 2010 WL 2196104, at *9 (approving a $25,000 enhancement award).

Nor do the varied claim releases create inequitable treatment. The class representatives' agreement has a general release for "any and all claims" against the defendant (ECF 275-2, at 23–25), while the other class members discharge defendant only from claims "arising from the same alleged facts in the complaints in this Action" (*id.* at 27–28). But this difference is reasonable. After all, the class representatives will receive additional compensation to waive their remaining "individual claims." (*Id.*; ECF 275-3, at 6; ECF 275-4, at 6.)

So the settlement treats class members "equitably." *See* Fed. R. Civ. P. 23(e)(2)(D). The settlement thus preliminarily appears to be "fair, reasonable, and adequate," and the Court would "likely" approve the proposal under Rule 23(e)(2).

### 2. *Conditional Class Certification*

Next, the Court must assess whether it "will likely be able to" "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Plaintiffs request conditional certification of a new class for "settlement purposes only." (ECF 275, at 20.) The previously certified class includes:

> All of Defendant's non-exempt California Patient Service Representatives who were not compensated with one hour of pay for all instances where they did not receive a duty-free and uninterrupted 10 minute rest period consistent with California law, any time between September 13, 2015, and the date of judgment.

(ECF 158, at 36.) By contrast, the newly proposed class would include:

> All current and former non-exempt Patient Service Representatives of Defendant who were employed at any time in the State of California during the Class Settlement Period.

(ECF 275, at 7.) When considered within the context of the proposed settlement terms, these two classes are functionally identical. Both include "[a]ll" of the "non-exempt" "Patient Service Representatives" who worked for Quest in "California" from September 15, 2015, until this case's resolution. (ECF 158, at 36; ECF 275, at 7; ECF 275-2, at 23.) And the proposed settlement compensates "[a]ll of Defendant's non-exempt California Patient Service Representatives" for defendant's alleged "rest period claims" policy that neither provides "uninterrupted" 10-minute "rest period[s]" nor pays for break interruptions. (ECF 158, at 36; ECF 275-2, at 17.)

So the Court's previous class-certification analysis under Rule 23(a) and 23(b)(3)—which it affirmed after a reconsideration request (*see* ECF 158, at 20–22, 26–34; ECF 219)—applies with equal force to the newly proposed class. At a minimum, it suggests that the Court "will likely be able to" "certify the [new] class for purposes of judgment on the proposal." *See* Fed. R. Civ. P. 23(e)(1)(B).

### 3. *Notice*

Given the foregoing preliminary findings, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). It must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice "may be by . . . United States mail," and "must clearly and concisely state in plain, easily understood language:

7

     (i)     the nature of the action;
     (ii)    the definition of the class certified;
     (iii)   the class claims, issues, or defenses;
     (iv)   that a class member may enter an appearance through an attorney if the member so desires;
     (v)    that the court will exclude from the class any member who requests exclusion;
     (vi)   the time and manner for requesting exclusion; and
     (vii)  the binding effect of a class judgment on members under Rule 23(c)(3)."

*Id.*

The parties' proposed notice satisfies each of these requirements. (*See* ECF 275-2, at 55–61.) First, the settlement administrator "will send" the notice "via United States first class mail" to every individual class member that it can reasonably identify from information that the class members gave Quest within the context of their employment. (ECF 275-2, at 41.) If necessary, the administrator will use alternative means to locate a class member—including a "skip-trace" through the member's social security number. (*Id.*) The proposed notice also clearly and concisely states (i) the history and nature of this lawsuit (*id.* at 56); (ii) the formerly-certified and newly-proposed class definitions (*id.*); (iii) the claims and issues in plaintiffs' previously-filed and newly-proposed complaints, in addition to the defendant's denials and defenses (*id.*); (iv) the ability to "appear through" an "attorney" (*id.* at 60); (v) the ability to "exclude" themselves "from the class settlement" (*id.* at 59–60); (vi) that, to exclude themselves, they should "provide a signed and dated letter to the Settlement Administrator requesting to be excluded" within 45 days of the initial notice mailing (*id.*); and (vii) that the class members "will be bound" by the settlement's terms "unless" they "opt-out" (*id.* at 60).

In addition to satisfying all the Rule 23(c)(2)(B) requirements, the notice explains that "the Court can only approve or reject the settlement," gives details about the final hearing's date and location, and provides the class counsel's and settlement administrator's contact information for any class member questions. (ECF 272-5, at 60–61.) It also sets forth the class members' options in an organized chart on the notice's first page and later details how the payments will be calculated. (*Id.* at 55, 57.)

The Court approves the proposed notice.

**B.     PAGA Settlement**

Plaintiffs also ask the Court to preliminarily approve their California Private Attorney General Act settlement proposal. (ECF 275, at 7.) PAGA actions "allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 980 (2009). Because PAGA plaintiffs act essentially as state enforcement agents, any PAGA recovery is split between the plaintiffs and California's Labor and Workforce Development Agency. Cal. Lab. Code § 2699(m). And any PAGA judgment "bind[s]" the "named employee plaintiff," "government agencies," and "any aggrieved employee not a party to the proceeding." *Arias*, 46 Cal. 4th at 985.

Like class-action settlements, the Court "shall review and approve any settlement of any [PAGA] civil action." Cal. Lab. Code § 2699(s)(1)(2). But, beyond that broad mandate, there is little guidance about the PAGA "review" and "approv[al]" standards—"neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the California Labor & Workforce Development Agency" "has provided any definitive" standard. *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). So, absent an authoritative state standard, federal district courts typically apply the Rule 23(e)(2) framework and "approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *See Jordan v. NCI Grp., Inc.*, No. EDCV 16-1701 JVS (SPx), 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) (collecting cases); *see also Williams v. Superior Ct.*, 3 Cal. 5th 531, 549 (2017) ("PAGA settlements are subject to trial court review and approval, ensuring that any negotiated resolution is fair to those affected.").

So, although this Court has already found that the proposed settlement terms appear "fair, reasonable, and adequate" in the Rule 23(e)(2) context, it must find the same "in light of PAGA's policies and purposes." *See Jordan*, 2018 WL 1409590, at *2. Those "policies

and purposes" include "augmenting the state's enforcement capabilities" and "encouraging compliance with Labor Code provisions." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1132–33 (N.D. Cal. 2016). When "PAGA claims are settled in the same agreement" as other "underlying Labor Code" violations, courts have looked at the full settlement, rather than just the PAGA portion, in assessing whether it "may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

As to the PAGA-specific portions of this proposal, the terms appear sufficiently "fair, adequate, and reasonable." *See Jordan*, 2018 WL 1409590, at *2. The total PAGA payment is $100,000 (ECF 275-2, at 35), which is 2.5% of the total settlement—far more than courts often require, *see Haralson*, 383 F. Supp 3d. at 972–73 (collecting cases and noting that "1% of the total [settlement] value" tends to be a PAGA settlement-approval threshold). Of that $100,000, the plaintiffs will appropriately pay 75% to the California Labor & Workforce Development Agency and 25% to the PAGA members. (ECF 275-2, at 35); *see* Cal. Lab. Code § 2699(i) (2016) (requiring a 75%–25% apportionment); *id.* § 2699(v)(1) (2024) (noting that the 2024 amendments, including the new 65%–35% apportionment requirement, apply only to "civil action[s] brought on or after June 19, 2024"). Also, as previously discussed, the payments will be distributed fairly and on a pro rata basis according to the "number of Eligible Pay Periods each PAGA Member worked during the PAGA Settlement Period." (ECF 275-2, at 35.)

The PAGA distribution appears to be fair. At this preliminary-approval stage, it suffices to say that relief for 5,380 allegedly aggrieved workers, the proposed multi-million-dollar settlement, a $100,000 PAGA fine, and years of litigation likely suffice to "augment[]" California's labor law "enforcement" and "encourag[e] compliance with" its labor laws. *See O'Connor*, 201 F. Supp. 3d at 1132–33. Still, the parties must address one discrepancy: the PAGA period and class settlement period inexplicably differ by roughly three years. (ECF 275-2, at 23 (class settlement period begins on September 13,

10

2015); *id.* at 27 (PAGA settlement period begins July 10, 2018).) The parties must explain that difference in the motion for final settlement approval.

### C. Leave to File Second Amended Complaint

Plaintiffs also request leave to file "a Second Amended Complaint that adds" "derivative rest break claims." (ECF 275, at 12.) As the Court explained in a previous order, amendment requires "good cause." (ECF 219, at 13 (quoting *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017)).)

Plaintiffs' proposed amendments involve three substantive changes: (1) adding three substantive claims and some supporting allegations (ECF 275-2, at 125, 130–31, 140, 147–52); (2) changing the proposed class (*id.* at 138–39); and (3) updating the named plaintiffs' employment period with Quest (*id.* at 133).

The first set of changes involve allegations that would hold defendant accountable for (a) failure to pay "unpaid premiums for missed rest periods," which "constitute unpaid wages" (claim 6) (ECF 275-2, at 147–48); (b) "fail[ure] to provide accurate and complete" "wage statement" information on account of the claim 6 allegations (claim 7) (*id.* at 148–51); and (c) "fail[ure] to pay those" claim 6 "wages on time" or "upon separation of employment (claim 8) (*id.* at 151–52). These changes are squarely in line with the proposed settlement's aim to compensate class members for allegedly missed rest periods or rest-violation payments. Like the settlement proposal, these changes are "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e)(2), and they suffice to demonstrate good cause for complaint amendment.

Neither of the next two proposed changes—the class change nor the employment-period update—materially alter anything the Court must consider when evaluating class settlements. The proposed class change still provides "fair, reasonable, and adequate" relief for the plaintiffs, *see id.*, and the employment-period change merely ensures that the complaint reflects the actual time that the named plaintiffs worked for Quest. This suffices to show good cause for the proposed changes.

11

### D.     Simpluris, Inc.

In their preliminary-approval request, the parties ask the Court to "appoint[] Simpluris, Inc." "to administer the settlement and notice process." (ECF 275, at 8.) But the parties provided no information about Simpluris or any basis for their request to appoint that company and pay it $22,686 from the gross settlement amount. (*See id.*) Nonetheless, courts in this district have appointed Simpluris in similar circumstances and for a similar cost. *See, e.g.*, *Diaz v. Solar Turbines, Inc.*, No. 3:20-cv-01156-WQH-KSC, 2022 WL 3161900, at *2 (S.D. Cal. Aug. 8, 2022). So the Court grants this request and appoints Simpluris as settlement administrator.

## CONCLUSION

Thus, the unopposed motion for preliminary settlement approval of both the class claims and the PAGA representative action is **GRANTED**. The Court will hold a final approval hearing on **December 5, 2025, at 10:00 a.m.** Accordingly, the Court orders as follows:

1. The following class is conditionally certified for settlement purposes only, pending a final hearing on the matter:

   > All current and former non-exempt Patient Service Representatives of Defendant who were employed at any time in the State of California during the Class Settlement Period.

2. The proposed Notice of Class and PAGA Action Settlement (ECF 275-2, at 55–61) is **APPROVED**.

3. Plaintiffs Pamela Stewart and Zulekha Abdul are appointed as class representatives, and Graham S.P. Hollis and Hali M. Anderson of GrahamHollis APC are appointed as class counsel.

4. Simpluris, Inc., is appointed as settlement administrator.

5. Plaintiffs' request for leave to file the second amended complaint is **GRANTED**.

6. The parties must meet the following deadlines:

|   | | |
|---|---|---|
| a. | Defendant to Submit Class Data to the Settlement Administrator | June 23, 2025 |
| b. | Settlement Administrator to Mail the Notice of Settlement to all Class Members | July 14, 2025 |
| c. | Settlement Class Members to Postmark Any Eligible Workweek or Eligible Pay Period Disputes | August 28, 2025 |
| d. | Settlement Class Members to Postmark Opt-Out Requests | August 28, 2025 |
| e. | Settlement Class Members to Postmark Any Written Objections to the Settlement | August 28, 2025 |
| f. | Settlement Administrator to Provide Class Counsel with Declaration of Due Diligence | November 21, 2025 |
| g. | Submit Motion for Final Approval, inclusive of information about any undeliverable class notices and claim packets, class members with valid claims, class members who opted out, objections to or comments about the settlement proposal, responses to any objections, any attorneys' fees and costs, the ancillary agreements relating to the representative plaintiffs' individual claims, and the discrepancy between the lengths of the settlement and PAGA class periods | October 21, 2025 |

| | | |
|---|---|---|
| h. | Respond to the Motion for Final Approval | November 4, 2025 |
| i. | Hearing on Final Approval and Fairness | December 5, 2025 |

Dated: May 21, 2025

_____
Hon. Andrew G. Schopler
United States District Judge