UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pamela STEWART, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., et al.,<br><br>                              Defendants. | Case No.: 19-cv-2043-AGS-DDL<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT (ECF 280)** |

For years, the parties vigorously litigated this class-action and PAGA lawsuit and were "nearly on the eve of trial" before they ultimately came to a settlement. (ECF 280, at 11.) They request final approval of that agreement on behalf of 6,301 class members. Of those, 5,418 are also Private Attorneys General Act members.

Since preliminary approval (*see* ECF 277), the parties abided by all deadlines, properly notified the class members, and followed all Court instructions. No class member objected to the settlement, and one class member requested exclusion—bringing the class number down from 6,302 to 6,301. (ECF 280-5, at 4.) The Court held a hearing on the proposed final settlement on December 5, 2025, and now approves the final settlement. These are the approved monetary distributions:

| | |
|---|---|
| **Gross Settlement Amount** | **$3,950,000.00** |
| Attorneys' Fees | $1,316,666.67 |
| Litigation Costs | $1,005,000.00 |
| Settlement Administrator Costs | $26,408.00 |
| Class Representative Enhancement Awards | $30,000.00 |
| PAGA Payment | $100,000.00 |
| **Net Settlement Amount** | **$1,471,925.33** |

## **DISCUSSION**

**A.    Class-Action Settlement**

There is a "strong judicial policy that favors settlements, particularly where complex

1

class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Class actions, though, "may be settled" "only with the court's approval." Fed. R. Civ. P. 23(e). The Court preliminarily approved the following class under Rule 23(a) and 23(b)(3):

> All current and former non-exempt Patient Service Representatives of Defendant who were employed at any time in the State of California during the Class Settlement Period.

(ECF 277, at 6–7; *see also id.* at 7 (noting that the class period runs "from September 15, 2015, until this case's resolution")).) That analysis was premised on the Court's previous class-certification and reconsideration orders. (*See* ECF 158, at 20–22, 26–34; ECF 219; ECF 277, at 6–7.) "Because no facts that would affect these requirements have changed since the Court preliminarily approved the settlement," "this order incorporates by reference its prior analysis as set forth in the order granting preliminary approval." *See Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 595 (N.D. Cal. 2020). The Court thus certifies the class for settlement purposes.

### 1. *Fairness, Reasonableness, and Adequacy*

At final approval, "the court may approve [the settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). This fairness assessment is guided by two overlapping sets of factors, which are set forth in Federal Rule of Civil Procedure 23 and in caselaw. *See* Fed. R. Civ. P. 23(e)(2)(A)–(D); *Hanlon*, 150 F.3d at 1026.

#### a. *Rule 23 Factors*

First, Rule 23 requires the Court to "consider[] whether": (1) the class representatives and counsel "adequately represented" the class; (2) the parties negotiated the proposal "at arm's length"; (3) the proposed "relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). The Court engaged in that assessment in its preliminary-approval

order, so the adequate-representation, adequate-relief, and equitable-treatment analyses at the preliminary-approval stage apply here as well. (*See* ECF 277, at 2–6.) The Court's final-approval analysis thus focuses primarily on the outstanding issues.

The Court concludes that the parties engaged in an "arm's length" negotiation. *See* Fed. R. Civ. P. 23(e)(2)(B). For the "arm's length" analysis, courts assess whether the proposed settlement was "the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs*, 955 F.2d at 1290. Three "subtle signs" that suggest fraud or collusion are "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674–75 (9th Cir. 2025). As the Court found in its preliminary-approval order, there is no evidence of a "clear sailing" agreement and no "kicker" or "reverter" clause that might suggest any shadiness. (*See* ECF 277, at 2–4.)

The only remaining "subtle sign" that courts must be wary of—"disproportionate distribution of the settlement"—is not an issue here. Plaintiffs' counsel seeks attorneys' fees and costs from the gross settlement amount. Turning first to the fees request, they request "33.33%," or "$1,316,666.67," from the "Gross Settlement Amount." (ECF 280, at 26–27.) "When calculating an attorney's fee award, a district court can employ one of two methods—the lodestar or a percentage of the recovery." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022). "District courts have discretion to employ either . . . method." *Id.* (quotation marks omitted). But "[w]hichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *Id.*

Both these methods suggest that the attorney-fee request is proper. "The percentage-of-recovery method expresses fees as a percentage of a recovered common fund, calculated to be sufficient to provide class counsel with a reasonable fee." *In re Apple*, 50 F.4th at 784

3

(quotation marks omitted). As this Court found in its preliminary-approval analysis, the attorneys' requested "fee" totaling "33.33%, or one-third of, the gross settlement amount" is acceptable and "well within the range of percentages [that] courts in this circuit have upheld as reasonable in other class action lawsuits." (ECF 277, at 3 (cleaned up).)

"Under the lodestar method, the district court multiplies the number of hours [counsel] reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award—the lodestar." *In re Apple*, 50 F.5th at 784. "The lodestar amount can then be adjusted by an appropriate positive or negative multiplier to account for factors such as the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* (quotation marks omitted). "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases," such as this one. *See Aboudi v. T-Mobile USA, Inc.*, No. 12-cv-2169-BTM-NLS, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015).

The "lawyers and paralegals" working on plaintiffs' behalf "have and will spend 2,184 hours litigating this case." (ECF 280-2, at 20.) When multiplied by their respective billable rates, the fees total "$1,291,514.50." (*Id.* at 21.) The requested fees are slightly more than that, totaling "$1,316,666.67." (ECF 280, at 12.) But the "multiplier" accounting for that difference is only 1.02, which is on the low end for complex cases like this one and confirms the reasonableness of the requested fee. *See Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *21 (N.D. Cal. Feb. 11, 2016) ("[T]he 1.7 multiplier—towards the lower end of the Ninth Circuit's scale—is reasonable."). Plaintiffs' counsel's $1,316,666.67 fee request is thus **APPROVED**.

In addition, plaintiffs' counsel requests "$1,005,000.00" in costs. (ECF 280, at 29.) Attorneys "may recover . . . those out-of-pocket expenses that would normally be charged to a fee[-]paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation marks omitted). And "[i]n a certified class action, the court may award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts look to whether the "items were necessary and reasonable in this case." *Harris*, 24 F.3d at 20.

4

Those recoverable costs include "costs advanced in connection with experts, legal research, court reporting services, travel for depositions, copying and mailing, for the costs of notice administration associated with class certification, and other customary litigation expenses." *Schneider*, 336 F.R.D. at 602; *see also Stiner v. Brookdale Senior Living, Inc.*, No. 17-cv-03962-HSG, 2025 WL 2998163, at *7 (N.D. Cal. Oct. 24, 2025) (allowing cost recovery "for expert fees, deposition transcripts, investigation services, travel, and research" in light of "the extent of fact and expert discovery, and the stage of the proceedings").

These are precisely the types of appropriate costs that plaintiffs' counsel requests here: reimbursement for the costs incurred for "several experts" "whose testimony and reports were critical to issues of class certification, liability, and damages," as well as "necessary costs for depositions (including transcripts, court reporting, and videography), legal research, travel for hearings and depositions, copying and mailing, and costs associated with class certification notice and case administration." (ECF 280-2, at 22–26.) Plaintiffs' counsel also included a table detailing every cost in the reimbursement request (*id.* at 251–58), a narrative accounting of the costs (*id.* at 22–26), and the corresponding bills, check stubs, or invoices (*id.* at 259–420). The "Defendant does not object to Plaintiffs' request for costs" (*id.* at 22), and there were "zero objections" from the class members (*id.* at 12), which further supports a reasonability finding. After all, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *National Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

In short, these costs are sufficiently "reasonable" to approve. *See Harris*, 24 F.3d at 20. The requested $1,005,000.00 is the same amount contemplated in the original settlement agreement (*see* ECF 280-2, at 209) and noticed to class members (*see* ECF 280-5, at 10). Neither the attorneys' fees nor the requested costs amount to a "disproportionate distribution of the settlement." *See In re Cal. Pizza Kitchen*, 129 F.4th at 675. The Court thus **APPROVES** the requested $1,005,00.00 in costs.

So, the Court concludes that the parties negotiated this proposal at "arm's length." *See* Fed. R. Civ. P. 23(e)(2)(B). None of the "subtle signs" of collusion are present, *see In re Cal. Pizza Kitchen*, 129 F.4th at 674–75, and the settlement was not the product of "fraud," "overreaching," or "collusion," *Class Plaintiffs*, 955 F.2d at 1290.

b. *Factors from Caselaw*

In addition to the Rule 23 factors, the Ninth Circuit instructs courts "to balance": "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. There is no "governmental participant" in this case, so that consideration is irrelevant. *See id.*

Many of these factors have already been addressed—either because they overlap with the considerations discussed above or were analyzed at length at the preliminary-approval stage and haven't changed since. For instance, the Court already assessed "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; . . . [and] the extent of discovery completed and the stage of the proceedings," *see id.*, when assessing the "costs, risks, and delay of trial and appeal" (*see* ECF 277, at 4). The Court also considered the "amount offered in settlement," *Hanlon*, 150 F.3d at 1026, when reviewing the average payout per class-member and analyzing the requested attorneys' fees immediately above. And the Court reviewed the "experience and views of counsel," *id.*, before finding that "the representation is adequate" in the preliminary-approval analysis (*see* ECF 277, at 2).

That leaves one factor: "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. The class members were adequately informed of that proposal. (*See* ECF 277, at 7 (directing notice to class members).) The "Notice Packets" sent to each class member included the information that the Court directed the

6

parties to include: it was sent "by United States mail," and "clearly and concisely state[d] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *See* Fed. R. Civ. P. 23(c)(2)(B); (ECF 280-5, at 8–13 (compliant notice packet)). In addition to satisfying all Rule 23(c)(2)(B) requirements, the notice further explained that "the Court can only approve or reject the settlement," gave details about the final hearing's date and location, and provided the class counsel's and settlement administrator's contact information for any class-member questions. (ECF 280-5, at 12–13.) Ultimately, after various efforts at tracking down addresses for the class members, only "116" of the "6,302" packets were "undeliverable." (*See id.* at 4.)

The responding class members' reactions were favorable. There were no objections, and only one class member requested exclusion. (*Id.*) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *National Rural Telecomms.*, 221 F.R.D. at 528–29; *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

So, the notice and class members' reactions, too, indicate that this settlement process has been fair, which satisfies the final fairness factor. The Court finds that the settlement is "fair, reasonable, and adequate" under both Rule 23 and the relevant caselaw.

### 2. *Class Action Fairness Act*

Finally, the Class Action Fairness Act imposes these requirements: "Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of

the proposed settlement[.]" 28 U.S.C. § 1715(b). The defense complied with these prerequisites when it "issued the required notice to the United States and California Attorneys General in August 2024 shortly after Plaintiffs filed their Motion for Preliminary Approval." (ECF 280-2, at 13.) The only outstanding requirement is for the defense to submit "any final judgment or notice of dismissal." *See* 28 U.S.C. § 1715(b)(7).

**B.      PAGA Settlement**

Of the 6,302 potential class members, 5,418 are also Private Attorneys General Act "Members who worked a total of 304,485 PAGA pay periods." (ECF 280-2, at 12.) Like class-action settlements, the Court "shall review and approve any settlement of any [PAGA] civil action." Cal. Lab. Code § 2699(s)(1)(2). The Court preliminarily approved the PAGA proposal as "fair" (ECF 277, at 10), and it resolved all outstanding issues and developments since preliminary approval—including the change in PAGA group size from 5,380 to 5,418—at the December 5, 2025 hearing. None of those developments substantively affect the Court's previous analysis. (*See generally* ECF 277, at 10.)

As required, the parties also provided settlement notice to the California Labor and Workforce Development Agency "at the same time" that they submitted it to the Court. *See* Cal. Lab. Code§ 2699(s)(2); (*see* ECF 275; ECF 280-2, at 2, 231). And they "submitted the Order Granting Plaintiffs' Motion for Preliminary Approval of Class and PAGA Representative Action Settlement to the" Agency before filing for final approval. (ECF 280-2, at 3, 233.)

Since nothing has substantively changed and the parties properly provided notice, the Court finalizes its preliminary determination that the PAGA agreement is fair and procedurally appropriate. The PAGA settlement claims are **APPROVED** for the 5,418 PAGA group members.

## CONCLUSION

Plaintiffs' unopposed motion for final approval of class-action and PAGA settlement is **GRANTED**. The Court orders as follows:

1.  Graham S.P. Hollis and Hali M. Anderson of ARCH Legal, P.C., are appointed

19-cv-2043-AGS-DDL

as class counsel.

2. The following class is certified for settlement purposes:

> All current and former non-exempt Patient Service Representatives of Defendant who were employed at any time in the State of California during the Class Settlement Period.

3. Simpluris is awarded $26,408.00 for administering the settlement process.

4. Simpluris must issue settlement awards from the $1,471,925.33 net settlement amount to the 6,301 participating class members.

5. Simpluris must issue a $75,000.00 PAGA payment to the California Labor and Workforce Development Agency and distribute $25,000.00 to the 5,418 PAGA members.

6. Each named plaintiff is awarded the agreed-upon $15,000 class representative enhancement.

7. Class counsel is awarded a $1,316,666.67 fee and $1,005,000.00 in costs.

8. Any settlement checks that remain uncashed 180 days after mailing must be transmitted to the State of California Controller in accordance with California's unclaimed property laws.

9. The Clerk must enter a final judgment and then close this case. The Court will retain jurisdiction over this matter for the purposes of enforcing the settlement.

Dated:  March 25, 2026

_____
Hon. Andrew G. Schopler
United States District Judge

9